Orval Q. and Florence B. MATTESON,
Appellants/Cross–Respondents,

v.

DIRECTOR OF REVENUE, STATE OF
MISSOURI, Respondents/Cross–
Appellants.

No. 77169.

Supreme Court of Missouri,
En Banc.

Oct. 24, 1995.

As Modified on Denial of Rehearing
Nov. 21, 1995.

Colonel Orval Q. Matteson, Jacksonville, Alabama, pro se.

Jeremiah W. (Jay) Nixon, Atty. Gen., James R. Layton, Asst. Atty. Gen., Jefferson City, for respondents/cross-appellants.

COVINGTON, Judge.

Orval and Florence Matteson filed a petition before the Administrative Hearing Commission (AHC) seeking review of the Director of Revenue's final decision denying their refund claim and determining that they owed additional 1988 Missouri income tax, interest, and additions. The Mattesons claimed that the Missouri tax scheme unfairly discriminates against nonresidents. They also claimed that they were entitled to a deduction for timber expenses accumulated in years in which they did not file a Missouri income tax return. The AHC rejected the Mattesons' contention on the question of whether the Missouri tax scheme unfairly discriminates against nonresidents. The AHC also ruled in favor of the director on the timber expense issue. The AHC allowed the Mattesons a refund, however, based upon what the AHC found to be the erroneous inclusion of Colonel Matteson's federal pension to calculate the rate at which the Missouri timber profits would be taxed. The Mattesons appeal the decision as to the nonresident income and timber expense issues. The director cross-appeals on the allowance of a refund. The decision of the AHC is affirmed in part and reversed in part.

## I.

The Mattesons are Alabama residents who own timber land in Wayne County, Missouri. They earn income on the land only in years they sell timber, but they incur maintenance expenses on the property every year. Prior to 1986, the Mattesons deducted the expenses on their federal income tax as "miscellaneous deductions." The Tax Reform Act of 1986, 26 U.S.C. § 67(a) (1986), limited miscellaneous deductions to those exceeding two per cent of the taxpayer's adjusted gross income. The Mattesons capitalized the maintenance expenses on their 1988 federal income tax return by adding them to the basis of the timber at the time of sale instead of including them as miscellaneous deductions.

The Mattesons sold timber in 1988 and filed a nonresident 1988 Missouri tax return on August 12, 1989, in which they claimed deductions for maintenance expenses incurred in years when they reported no Missouri income.

The director disallowed the accumulated timber expense deductions and issued a notice of adjustment. The Mattesons paid the balance but sent the director a letter objecting to the notice of adjustment. The Mattesons inquired about the disallowance of the timber expenses and stated that they, as nonresidents, should be taxed only on their Missouri income and at the same rate as Missouri residents. The Mattesons did not object to the inclusion of Colonel Matteson's military pension income on their 1988 federal and Missouri tax returns.

A series of amended returns and correspondence between the Mattesons and the director followed. The Mattesons filed an original and two amended federal income tax returns and an original and two amended Missouri tax returns. They filed the amended returns because of typographical and other errors that resulted in the erroneous calculations of tax. On all the returns, the Mattesons included the colonel's federal military pension in their federal adjusted gross income. The Mattesons subtracted the accumulated timber expenses as deductions on all the Missouri returns.

The Mattesons' calculations on their first amended 1988 Missouri tax return lowered their nonresident income percentage, so they sought a refund. After the director denied the Mattesons' refund claim, they filed a protest of the denial of the refund claim. The basis of the protest rested in the Mattesons' belief that they should be permitted to claim timber expense deductions on the 1988 Missouri return, even though they could not be deducted from the 1988 federal return, because they had not had any Missouri income from which to deduct them before 1988. The Mattesons did not seek a refund on grounds that the military pension income was not includable; in fact, they never raised the issue before the director.

On the Mattesons' second amended Missouri return, they reported zero balance due and no refund due. The director issued a second notice of adjustment based on the Mattesons' second amended Missouri return. The second notice of adjustment determined that the Mattesons continued to owe a balance on their 1988 Missouri income tax. On March 12, 1993, the director issued a final decision denying the Mattesons' refund claim and claiming that the Mattesons owed additional 1988 Missouri income tax, interest, and additions. The director issued a notice of deficiency dated April 6, 1993. The Mattesons filed a petition before the AHC on April 8, 1993, challenging the director's final decision.

## II.

The Mattesons first assert that the Missouri tax scheme unfairly discriminates against nonresidents because it includes their non-Missouri source income in determining the rate at which their Missouri income is to be taxed. Missouri's graduated tax scheme calculates the nonresident's tax rate based upon federal adjusted gross income less deductions and applies that rate to the Missouri source income of the nonresident. §§ 143.041, .181, RSMo 1994.[1] The Mattesons claim that for purposes of determining nonresidents' Missouri tax rate, nonresidents should be treated the same as residents with the same Missouri income, irrespective of the nonresident's total income reported on the federal tax return.

The United States Supreme Court plainly rejected an assertion similar to the Mattesons'. "When the State levies taxes within its authority, property not in itself taxable by the State may be used as a measure of the tax imposed." *Maxwell v. Bugbee,* 250 U.S. 525, 539, 40 S.Ct. 2, 6, 63 L.Ed. 1124 (1919). *See also Brady v. State,* 80 N.Y.2d 596, 592 N.Y.S.2d 955, 958–61, 607 N.E.2d 1060, 1063–65 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2998, 125

---

1. All statutory references are made to RSMo 1994, unless otherwise noted. Although the proceedings before the AHC and the director in- volved previous editions of the Missouri revised statutes, the statutes have not changed substantively for purposes of this case.

L.Ed.2d 692 (1993); *Stevens v. State Tax Assessor,* 571 A.2d 1195, 1196–97 (Me.1990), *cert. denied,* 498 U.S. 819, 111 S.Ct. 65, 112 L.Ed.2d 40 (1990) (upholding similar nonresident taxation schemes). In terms of ability to pay, similarly situated taxpayers are those having the same total income. *See Brady,* 592 N.Y.S.2d at 961, 607 N.E.2d at 1065; *Stevens,* 571 A.2d at 1197. Taxpayers with a total income of approximately $33,000, the amount of the Mattesons' Missouri source income before the timber deductions, are not similarly situated to the Mattesons, who reported a combined adjusted gross income of over $100,000 on their federal tax return.

The Mattesons also contend that the AHC erred in affirming the director's disallowance of their accumulated timber expense deductions. They claim that the disallowance of the deductions on their 1988 Missouri tax return is inequitable because they are entitled to deductions for the timber expenses taken as "miscellaneous deductions" on their federal returns in previous years, but not deducted on any prior Missouri return. The Mattesons further argue that Missouri tax deduction rules are the same as the federal rules because the Missouri income tax system "piggybacks" on the federal system and because there is no Missouri statute or regulation that provides that nonresident timber owners cannot accumulate deductions until a year of sale.

■ The Mattesons' contentions are incorrect. "[A]n allowance for deductions from gross income does not turn on general equitable considerations. Deductions depend upon legislative grace and are allowable only to the extent authorized by statute." *Brown Group, Inc. v. Administrative Hearing Comm'n,* 649 S.W.2d 874, 877 (Mo. banc 1983). Section 143.121, RSMo 1994, governs the procedure for taking deductions in calculating Missouri taxable income. Under section 143.121.1, the taxpayer's Missouri gross income is the adjusted gross income reported on that year's federal income tax return, subject to certain specifically enumerated adjustments. *See* § 143.121.3. There is no specifically enumerated adjustment for timber expenses incurred in past years and not

deducted on the current federal return. § 143.121.3.

The Mattesons nevertheless contend that they are entitled to a deduction under section 143.121.3. The only deduction that might conceivably apply to this case is set forth in section 143.121.3(b), RSMo 1986: the taxpayer may deduct "[t]he portion of any gain ... from the sale ... of property having a greater adjusted basis to the taxpayer for Missouri income tax purposes [than for federal income tax purposes] on December 31, 1972, that does not exceed such difference in basis."

■ Section 143.121.3(b) is of no assistance to the Mattesons. At the hearing before the AHC, Colonel Matteson provided contradictory testimony on the differences between the Missouri and federal adjusted bases of the timber property. He testified that the basis has been higher for Missouri tax purposes for the entire period the Mattesons have owned the property and filed returns. He also testified, however, that in 1972 the basis could have been higher for federal tax purposes than for Missouri tax purposes. As taxpayers challenging the director's assessment, the Mattesons have the burden of proof on this issue. § 621.050, RSMo 1994. Having failed to meet their burden of proof on this issue, the Mattesons are not entitled to a deduction under section 143.121.3(b).

### III.

The Mattesons assert that Colonel Matteson's military pension was not subject to tax in Missouri, so could not be used to calculate the rate at which the Missouri timber profits were taxed, pursuant to *Hackman v. Director of Revenue,* 771 S.W.2d 77, 80–81 (Mo. banc 1989), *cert. denied,* 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990), in which this Court held that retired federal employees' pensions were to be excluded from taxable income. The AHC agreed with the Mattesons and found that the director "waived" the Mattesons' noncompliance with the statutory refund procedure. The AHC treated the Mattesons' claim as a notice of deficiency proceeding and modified the director's assessment. The director appealed.

The AHC's modification of the director's assessment was without basis in law. "Taxes may be authorized only by statute, and the director may not add to, subtract from, or modify the revenue statutes by regulation." *Bridge Data Co. v. Director of Revenue*, 794 S.W.2d 204, 207 (Mo. banc 1990). Section 143.801 is the statute by which Missouri has consented to a refund of any overpayment, erroneous payment or illegal payment of income tax. *Hackman*, 771 S.W.2d at 81. The consent is a narrow waiver of the state's sovereign immunity; the taxpayer must precisely follow the refund procedures delineated by the statute. *Community Federal Savings & Loan v. Director of Revenue*, 752 S.W.2d 794, 797 (Mo. banc), *cert. denied*, 488 U.S. 893, 109 S.Ct. 231, 102 L.Ed.2d 221 (1988); *State ex rel. Brady Motorfrate, Inc. v. State Tax Comm'n*, 517 S.W.2d 133, 137 (Mo.1974). The director cannot "waive" the appellant taxpayer's non-compliance with the mandatory statutory prerequisites to obtaining a refund. To receive a refund, the Mattesons were required to file a refund claim precisely meeting the refund procedures delineated by sections 143.801 and 143.821.

The Mattesons' claim for refund did not meet the "specific ground" requirement for a refund claim under section 143.821. The statutory refund procedure "necessarily requires that the Director of Revenue be apprised of the grounds for the taxpayer's claimed refund in a manner which allows him to make a meaningful determination of the issues presented by the taxpayers." *St. Louis Southwestern Ry. v. State Tax Comm'n*, 713 S.W.2d 830, 832 (Mo. banc 1986). Prior to the AHC proceeding, the Mattesons' claim was based solely upon a general complaint that Missouri is not authorized to include non–Missouri source income in calculating the rate at which their timber profits would be taxed. The Mattesons' broad assertion failed to apprise the director of the specific grounds upon which their claim for a refund was based. *See St. Louis*

*Southwestern Ry.*, 713 S.W.2d at 832; *IBM v. Director of Revenue*, 765 S.W.2d at 612–13.

In finding that it had authority to modify the director's assessment as a consequence of what it deemed to be the erroneous inclusion of the military pension, the AHC appears to have relied upon *J.C. Nichols Co. v. Director of Revenue*, 796 S.W.2d 16 (Mo. banc 1990). *Nichols* does not apply because it involved a notice of deficiency proceeding under section 143.611, RSMo 1986.[2] Section 143.611.1 provides:

> As soon as practical after the return is filed, the director of revenue shall examine it to determine the correct amount of tax. If the director of revenue finds that the amount of tax shown is less than the correct amount, he shall notify the taxpayer of the amount of deficiency *proposed* to be assessed. (Emphasis added.)

"The very use of [the word 'proposed'] indicates that the amount set out is fluid, subject to adjustment upon the determination of additional facts." *Nichols*, 796 S.W.2d at 21. In deficiency proceedings, therefore, the AHC's jurisdiction is *de novo*, even to the extent that the AHC may increase the director's assessment in a given case on grounds not previously raised either by the taxpayer in a protest or by the director in a deficiency notice. *See Nichols*, 796 S.W.2d at 20–21.

The present case, however, is not a deficiency proceeding. It is a claim for refund proceeding pursuant to section 143.821. The Mattesons' AHC petition, filed on April 8, 1993, challenged the director's March 12 final decision denying the refund claim, not the April 6 notice of deficiency. Section 143.821 contains an explicit requirement that "[e]very claim for refund shall be filed with the director of revenue in writing...." In *IBM v. Director of Revenue*, 765 S.W.2d 611, 612–13 n. 5 (Mo. banc 1989), this Court stated that "[a]ll grounds for refund, as well as all claims for refund, must be raised first with the Director of Revenue. The Commission may not decide claims filed for the first

2. The AHC's reliance on *Nichols* and the rules governing notice of deficiency proceedings may be explained in part by the fact that the director titled her March 12, 1993, final decision "Protest of Notice of Deficiency," although she did not issue a notice of deficiency on the original 1988 return until April 6, 1993.

time before [it], nor may the Commission rule on grounds not presented to the Director of Revenue." The Mattesons never raised the issue of the taxability of the military pension before the director, nor in their complaint before the AHC. Furthermore, the Mattesons included the federal pension income on their return and did not protest the director's deficiency claim. The AHC, therefore, was without authority to modify the director's assessment.

In conclusion, the Mattesons filed their 1988 Missouri tax return and paid their initial determination of tax due on August 12, 1989. To seek a refund, they were required to file the refund claim on or before August 12, 1992. § 143.801. Because they failed to file a timely refund claim meeting the statutory requirements of section 143.821, the Mattesons are not entitled to a refund. On each of their 1988 returns, including the first and second amended returns, the Mattesons included the federal pension income as income. The Mattesons never protested the director's notice of deficiency. For these reasons, the Mattesons are not entitled to have excluded from their taxable income the federal pension income. The AHC erred when it decided that the Mattesons are entitled to a refund on grounds of the inclusion of the military income for the purpose of calculating the rate upon which the Missouri timber profits should be taxed.

## IV.

The decision of the AHC is affirmed with respect to the use of non-Missouri source income in calculating the tax rate and disallowance of the accumulated timber expenses. With respect to the refund based upon the inclusion of Colonel Matteson's military pension, the decision of the AHC is reversed.

HOLSTEIN, C.J., BENTON, PRICE, LIMBAUGH, ROBERTSON, JJ., and ULRICH, Special Judge, concur.