R. Mitchel BACHTEL and Cary
M. Bisbey, Appellants,

v.

MILLER COUNTY NURSING HOME
DISTRICT, Respondent.

No. SC 84835.

Supreme Court of Missouri,
En Banc.

July 29, 2003.

Daniel N. McPherson, James W. Riner, Jefferson City, for Appellants.

Elizabeth S. Raines, Thomas E. Rice, Jr., Kara T. Stubbs, Kansas City, for Respondent.

LAURA DENVIR STITH, Judge.

R. Mitchel Bachtel and Cary Bisbey each sued their former employer, the Miller County Nursing Home, alleging they had been wrongfully discharged in retaliation for reporting violations of the Omnibus Nursing Home Act (the Act), chapter 198, RSMo 2000.[1] The Miller County Nursing Home District (the District) owns and operates the Miller County Nursing Home.

To encourage compliance with the Act, and so as to effectuate its purpose of protecting residents of nursing homes, the Act requires nursing home employees to report violations of the Act involving neglect or abuse of residents. The Act further prohibits any retaliation against employees, residents or family members of residents who report such violations. The Act expressly provides a private right of action for residents who are retaliated against for such reporting. Secs. 198.090 and 198.093.

Although the Act provides that it shall not apply to most state or state-licensed facilities, it specifically expressly provides that the provisions of the Act apply to nursing home districts, such as the Miller County district. In the absence of a provision excepting the provisions prohibiting retaliation against employees who report violations of the Act, those sections too necessarily apply to nursing home districts. This express provision that the Act is applicable to nursing home districts constitutes a waiver of sovereign immunity to the extent necessary to enforce the provi-sions of the Act as to those districts, including the right to bring a private right of action against nursing home districts who retaliate against employees in violation of the Act. For this reason, the trial court erred in dismissing plaintiffs' claims based on sovereign immunity. Reversed and remanded.

## I. FACTS AND PROCEDURAL BACK-GROUND

R. Mitchel Bachtel, a licensed practical nurse, and Cary M. Bisbey, a doctor of osteopathic medicine, were employed at the Miller County Nursing Home, a nursing home owned and operated by the District. The District is a political subdivision of the state existing and operating pursuant to sections 198.200 to 198.360, RSMo 2000. Bachtel began working as an at-will employee for the District in February 1995. Bisbey, also an at-will employee, was employed by the District as medical director of the Miller County Nursing Home in September 1997.

In the summer of 2000, several nursing home residents contracted clostridium difficile, a highly infectious disease. Bachtel and Bisbey instructed the nursing home staff that giving anti-diarrhaetic medications to the infected residents would be dangerous and could result in grave harm, including death. Despite these warnings, an employee ordered a nurse to administer anti-diarrhaetic medication to the infected residents, one of whom became very sick and required hospitalization. Subsequently, Bachtel and Bisbey informed the board of directors of the District of the employee's actions and that he had endangered the infected residents. Bisbey also filed a formal complaint with the Missouri Divi-

1. All statutory references are to RSMo 2000, unless otherwise indicated.

sion of Aging (Division),[2] recounting deficiencies at the home.

In October 2000, both plaintiffs were fired. Each filed a petition for damages against the District for wrongful discharge.[3] The suits were consolidated. Both plaintiffs' petitions allege that they were fired for reporting incidents of abuse to the District's board of directors and to officials at the Division and that their termination violated the anti-retaliation provision of section 198.070.10. The District filed a motion to dismiss the petitions for failure to state a claim upon which relief could be granted, arguing that because it is a political subdivision of the state it is immune from plaintiffs' tort claims based on the doctrine of sovereign immunity, as set out in section 537.600. The circuit court dismissed the petitions with prejudice. After opinion by the Court of Appeals, Western District, this Court granted transfer. Mo. Const. art. V, sec. 10.

## II. ANALYSIS

When reviewing dismissal of a petition, a court allows a pleading its broadest intendment, treats all facts alleged as true, construes allegations favorably to plaintiff and determines whether averments invoke principles of substantive law entitling plaintiff to relief. *Hagely v. Bd. of Educ. of Webster Groves Sch. Dist.*, 841 S.W.2d 663, 665 (Mo. banc 1992). In construing statutes, a court ascertains the intent of the legislature from the language used and gives effect to that intent. *In re Beyersdorfer*, 59 S.W.3d 523, 525 (Mo. banc 2001). The provisions of a legislative act are not read in isolation but construed together, and if reasonably possible, the provisions will be harmonized with each other. *State, Missouri Dept. of Soc.*

*Servs., Div. of Aging v. Brookside Nursing Ctr., Inc.*, 50 S.W.3d 273, 276 (Mo. banc 2001); *Hagely*, 841 S.W.2d at 667. Insight into the legislature's object can be gained by identifying the problems sought to be remedied and the circumstances and conditions existing at the time of the enactment. *Sermchief v. Gonzales*, 660 S.W.2d 683, 688 (Mo. banc 1983).

*A. The Omnibus Nursing Home Act Provides a Private Right of Action to Private Nursing Home Residents and Employees.*

This Court has previously recognized that the Act, "[i]s an exercise of the police power of the state, directed to the protection of the health, safety, and welfare of a large and increasing nursing home population." *Stiffelman v. Abrams*, 655 S.W.2d 522, 528 (Mo. banc 1983). One of the key purposes of the Act is to provide protection to those individuals who are unlikely, or unable, to protect themselves. As *Stiffelman* stated:

"The obvious purpose of this statute is to protect the health and safety of citizens who are unable fully to take care of themselves, particularly the more elderly persons, who, from necessity or choice, spend their later years in homes of the type which the statute would license or regulate[.] ... Such an enactment as this is a vital and most important exercise of the state's police power.... As such its construction, consistent with its terms, should be sufficiently liberal to permit accomplishment of the legislative objective ... [.]"

*Id.* at 528, *quoting, State ex rel. Eagleton v. Patrick*, 370 S.W.2d 254, 257 (Mo.1963).[4]

---

2. The Division of Aging is now the Division of Social and Senior Services.

3. Bisbey's petition also included a claim for breach of an employment contract, but he voluntarily dismissed that claim.

The Act was enacted as a response to public concerns about elderly residents of nursing homes and the inadequacy of state laws and regulations governing nursing home facilities.[5] The Act contains provisions enforcing laws requiring proper treatment of residents, including provisions for revocation of licenses,[6] civil penalties for non-compliance with the Act's standards,[7] and required training of nursing home staff.[8]

Significantly, section 198.070[9] required mandatory reporting by nursing home staff and doctors of suspected acts of abuse and neglect of residents.[10] A violation of this reporting law is a class A misdemeanor. *Sec.* 198.070.3. Under section 198.070.8, an individual who makes a good faith report of a suspected act of abuse or neglect is protected from criminal or civil liability.

Additionally, section 198.070.10 provides that neither a nursing home operator nor any person in authority in a facility shall retaliate against any employee who reports suspected incidents of patient abuse and/or neglect, stating in pertinent part:

No person who directs or exercises any authority in a facility shall evict, harass, dismiss or retaliate against a resident or employee because such resident or employee or any member of such resident's or employee's family has made a report of any violation or suspected violation of laws, ordinances or regulations applying to the facility which the resident, the resident's family or an employee has reasonably cause to believe has been committed or has occurred.

*Id. Clark v. Beverly Enters.–Missouri, Inc.,* 872 S.W.2d 522 (Mo.App. W.D.1994), held that this provision (198.070.10) implicitly creates a private right of action on the part of employees or others who are retaliated against or fired for reporting acts of abuse or neglect, stating:

while section 198.070 does not expressly state that it creates a private cause of action, it would be illogical to say the legislature did not intend to allow private causes of action when it created a statute which compels an employee to report violations of the law, and protects her from retaliation or dismissal or conversely subject her to a penalty for failure to report a violation.

*Id.* at 525–26.

*Clark* further held that, although an at-will employee, plaintiff was protected from termination for any of the reasons prohibited by section 198.070.10, as that section made applicable to nursing homes and nursing home districts the public policy exception to the traditional rule that at-will employees can be dismissed for any reason. *Id.* at 525–526. *See also, Porter v. Reardon Mach. Co.,* 962 S.W.2d 932, 936–37 (Mo.App. W.D.1998); *Boyle v. Vista Eyewear, Inc.,* 700 S.W.2d 859 (Mo.App. W.D.1985) (holding when an at-will employee has been discharged for reporting to his superiors or to public authorities

---

4. *See generally,* Steve Vossmeyer & Diane Felix, *The Missouri Omnibus Nursing Home Act of 1979: A Legislative History,* 24 St. Louis U.L.J. 617 (1981).

5. *Id.*

6. *Sec.* 198.036.

7. *Secs.* 198.026, and 198.029.

8. *Sec.* 198.082.

9. For a detailed analysis of section 198.070 see *Comment, A Critical Analysis: The Patient Abuse Provisions of the Missouri Omnibus Nursing Home Act,* 24 St. Louis U.L.J. 713 (1981).

10. *Sec.* 198.070.

misconduct that constitutes a violation of the law and of well-established and clearly mandated public policy, the employee has a cause of action in tort for damages for wrongful discharge).

■ This Court agrees with *Clark* that a private right of action in tort for employees of private nursing homes who are retaliated against for reporting violations of the Act is impliedly created by the language of section 198.070.10. As *Clark* noted, any contrary interpretation "[w]ould discourage employees from complying with statutes like section 198.070 which require whistle-blowing to further the public policy of protecting the sick and elderly." 872 S.W.2d at 525. Permitting employees to sue if they are retaliated against for reporting acts of abuse or neglect is necessary to effectuate the purpose of the Act and to prevent the very evils the Act was designed to ameliorate.

*B. The Omnibus Nursing Home Act Creates a Private Right of Action for Nursing Home District Employees Who Are Retaliated Against for Reporting Violations of the Act.*

Section 198.200 permits municipalities and counties to create "nursing home districts." "[W]hen a nursing home district is organized it shall be a body corporate and political subdivision of the state and shall be known as the '........Nursing Home District', and in that name may sue and be sued, levy and collect taxes...." *Sec.* 198.200.2. Section 198.200 further states, "[f]or the purposes of sections 198.200 to 198.360, 'nursing home' shall mean a residential care facility I, a residential care facility II, an intermediate care facility, or a skilled nursing facility as defined in section 198.006." *Sec.* 198.200.3.

Section 198.012.1(2) expressly makes all the provisions of the Act applicable to nursing home districts, providing in pertinent part:

The provisions of section 198.003 to 198.136 [the Act] shall not apply to any of the following entities:

(1) ...

(2) Any facility or other entity otherwise licensed by the state and operating exclusively under such license and within the limits of such license, *unless the activities and services are or are held out as being activities or services normally provided by a licensed facility under section 198.003 to 198.186, 198.200 [nursing home districts],* 208.030, and 208.159, RSMo, except hospitals licensed under the provision of chapter 197, RSMo.

*Id.* (emphasis added).

It is undisputed that the District, a body corporate and political subdivision of the State of Missouri, is a "nursing home district," licensed under section 198.200, that it owns and operates the Miller County Nursing Home in which plaintiffs were employed, and that the activities and services provided by the District are those "normally provided by a licensed facility" under section 198.200. *See sec.* 198.012.1(2).

The District acknowledges that it is subject to the provisions of the Act. None the less, it argues that it cannot be sued for firing plaintiffs for reporting violations of the Act, even though the Act specifically prohibits such retaliation, because the Act does not contain specific language stating that the doctrine of sovereign immunity is waived as to nursing home districts. In support, it cites cases holding that the doctrine of sovereign immunity is the general rule and that any purported statutory waiver of sovereign immunity must be express and is to be strictly construed. *See, e.g., McNeill Trucking Co., Inc. v. Missouri State Highway & Transp. Comm'n,*

35 S.W.3d 846, 848 (Mo. banc 2001); *State ex rel. New Liberty Hosp. Dist. v. Pratt*, 687 S.W.2d 184 (Mo. banc 1985).

This argument proves too much. Nothing in the statutes or case law requires that certain magic words must be used in order to waive sovereign immunity. The case law cited by the District merely requires that the intent of the legislature to waive sovereign immunity must be express rather than implied. While the most common way to express that intent may be to specifically state that sovereign immunity is waived, the legislature also expresses its intent through other language.

For instance, *H.S. v. Board of Regents, Southeast Mo. State Univ.*, 967 S.W.2d 665 (Mo.App. E.D.1998), recognized that in making the Missouri Human Rights Act (MHRA) applicable to state employers, the legislature had expressly waived sovereign immunity even though the statute did not contain a provision specifically stating "the defense of sovereign immunity is waived," because:

> The definition of "employer" in [s]ection 213.010(6) RSMo includes "the state, or any political or civil subdivision thereof." Section 213.055 RSMo provides that it shall be unlawful employment practice: "(1) for an employer, because of race, color, religion, national origin, sex, ancestry, age or handicap of an individual ..." to discriminate. Clearly [s]ection 213.055 RSMo was meant to apply to the state and its political subdivisions. Section 213.101 RSMo further provides that "the provisions of this chapter shall be construed to accomplish the purposes thereof and any law inconsistent with any provision of this chapter shall not apply."

*Id.* at 673.

*H.S.* concluded that the express creation of a private right of action and the express provision that MHRA would apply to the State were sufficient to constitute a waiver of sovereign immunity for the State and its political subdivisions in those instances covered by the statute, stating "[b]ecause the Missouri Human Rights Act treats the state and its subdivisions the same as it treats other employers, sovereign immunity does not preclude the trial court from awarding emotional distress damages pursuant to the Act." 967 S.W.2d at 673.

*Keeney v. Missouri Highway & Transp. Comm'n*, 70 S.W.3d 597, 600 (Mo.App. S.D. 2002), reached the same conclusion, applying MHRA to the Missouri Highway and Transportation Commission and rejecting its contentions that sovereign immunity barred suits against public entities absent specific language stating that sovereign immunity was waived. The required specificity was contained in the express statement in MHRA that the act applied to the State.

Similarly, the language of various taxing statutes allowing taxpayers to sue for refunds of improperly paid taxes, penalties or interest has been held to constitute an express waiver of sovereign immunity for that limited purpose, even though the statutes at issue do not use the specific words "sovereign immunity is waived." *See, e.g., Sprint Communications Co., L.P. v. Dir. of Revenue*, 64 S.W.3d 832, 835 (Mo. banc 2002) (applying section 144.190); *Matteson v. Dir. of Revenue*, 909 S.W.2d 356, 360 (Mo. banc 1995) (applying section 143.801). It is the express statement of the legislature's intent to allow itself to be sued, not the use of certain magic words, that is dispositive.

This same analysis applies to suits brought by residents of nursing home districts. For instance, similarly to MHRA and the taxing statutes, the express statement of legislative intent to allow suits against the State is provided by

the terms of sections 198.088 and 198.090 expressly giving *residents* who are retaliated against the right to sue nursing home facilities. In *Stiffelman,* this Court specifically held that these sections and section 198.093 create a private right of action for nursing home residents of facilities subject to the Act. 655 S.W.2d at 529. While the facility at issue in that case was private, section 198.012.1(2) expressly provides that nursing home districts are within the definition of a "facility" subject to the Act. But, under the District's argument, the courts would be required to hold that even nursing home residents were barred from suing under the specific authorizing provisions of the statute. Such a rule would render meaningless the provisions of the Act allowing suits by residents of homes operated by nursing home districts. The legislature is presumed not to have enacted a meaningless provision.

It did not do so here. For, just as was the case in regard to private nursing homes, "it would be illogical to say the legislature did not intend to allow private causes of action when it created a statute which compels an employee to report violations of the law, and protects her from retaliation or dismissal or conversely subject her to a penalty for failure to report a violation." *Clark,* 872 S.W.2d at 525. Clearly, residents of nursing home districts have a private cause of action for retaliation against them for reporting violations of the statute.

The same is true as to nursing home employees such as the plaintiffs herein. As noted, a private right of action by employees who are fired or otherwise retaliated against in violation of the Act is also inherent in the provisions of the section 198.070 requiring employees to report such violations, imposing criminal penalties for failing to do so, and prohibiting retaliation against them for doing so. *Id.* The legislature has expressly made all of the provisions of the Act, including the anti-retaliation provisions, applicable both to private nursing home facilities and to nursing home districts by way of section 198.012.1(2).

Since an employee of a private nursing home can sue under the provisions of the Act for retaliation, and as the provisions so permitting are expressly made applicable to nursing home districts, their language provides the express showing of legislative intent required to find a waiver of sovereign immunity. Any other reading of the statute would treat nursing home districts differently from private nursing homes, contrary to the express intent of the legislature that the Act should be fully applicable to nursing home districts.

## III. CONCLUSION

For the reasons set out above, the judgment of the trial court is reversed, and the case is remanded.

WHITE, C.J., WOLFF, PRICE and TEITELMAN, JJ., concur.

LIMBAUGH, J., dissents in separate opinion filed.

BENTON, J., concurs in opinion of LIMBAUGH, J.

STEPHEN N. LIMBAUGH, JR., Judge, dissenting.

I respectfully dissent.

At the outset, I question the majority's reliance on *Clark v. Beverly Enterprises–Missouri, Inc.,* 872 S.W.2d 522, 525 (Mo. App.1994), for the proposition that section 198.070.10 of the Omnibus Nursing Home Act (ONHA) implicitly creates a private cause of action for nursing home employees terminated in violation of the statute. The *Clark* court failed to account for section 198.067 of the ONHA, which autho-

rizes the Department of Social Services, or the Attorney General on the Department's behalf, to bring an action in circuit court seeking civil penalties or injunctive relief against a nursing home that violates section 198.070.10. The existence of sanctions under section 198.067 brings this case squarely within a well-established rule of statutory construction, that "[w]hen the legislature has established other means of enforcing its statutes, this Court will not recognize a private civil action for a violation unless such appears by clear implication to have been the legislative intent." *Dierkes v. Blue Cross and Blue Shield of Mo.*, 991 S.W.2d 662, 667 (Mo. banc 1999); *Johnson v. Kraft General Foods, Inc.*, 885 S.W.2d 334, 336 (Mo. banc 1994); *R.L. Nichols Ins., Inc. v. Home Ins. Co.*, 865 S.W.2d 665, 666–67 (Mo. banc 1993); *Shqeir v. Equifax, Inc.*, 636 S.W.2d 944, 948 (Mo. banc 1982). My struggle to find a clear implication that the legislature intended to create a private cause of action for violations of section 198.070.10 is all the more difficult in the face of another provision of the ONHA that does indeed expressly create a private cause of action. *See* section 198.093 (giving nursing home *residents,* as opposed to nursing home *employees,* a private cause of action for violations of sections 198.088 to 198.090).

In fact, *Clark's* holding is based as much on the court of appeals' application of a common law public policy exception to the at-will employee doctrine as it is statutory interpretation. *See Clark*, 872 S.W.2d at 525. The public policy exception, according to *Clark*, is that an at-will employee who is discharged for reporting a violation of law by an employer is exempted from the general rule barring the employee from bringing a private cause of action against the former employer for wrongful discharge. *Id.* But, regardless of whether a private cause of action is said to be implicitly created under section 198.070.10

by the legislature—as the majority suggests—or created by the courts pursuant to the public policy exception, in my opinion, the cause of action is barred under the doctrine of sovereign immunity.

Until today, the law in Missouri regarding the doctrine of sovereign immunity was clear. The general precept was that "sovereign immunity [was] the rule and waiver [was] the exception." *Bartley v. Special Sch. Dist. of St. Louis Cty.*, 649 S.W.2d 864, 869 (Mo. banc 1983). Recognition of this precept prompted this Court on numerous occasions to declare that statutory provisions that purportedly waive sovereign immunity are to be strictly construed. *See, e.g., McNeill Trucking Co., Inc. v. Mo. State Highway & Transp. Comm'n*, 35 S.W.3d 846, 848 (Mo. banc 2001); *State ex rel. Mo. Highway & Transp. Com'n v. Dierker*, 961 S.W.2d 58, 61 (Mo. banc 1998); *Richardson v. State Highway & Transp. Comm'n*, 863 S.W.2d 876, 882 (Mo. banc 1993); *State ex rel. New Liberty Hosp. Dist. v. Pratt*, 687 S.W.2d 184, 186 (Mo. banc 1985); *Kanagwa v. State ex rel. Freeman*, 685 S.W.2d 831, 834 (Mo. banc 1985); *Bartley*, 649 S.W.2d at 868; *Beiser v. Parkway Sch. Dist.*, 589 S.W.2d 277, 280 (Mo. banc 1979); *Charles v. Spradling*, 524 S.W.2d 820, 823 (Mo. banc 1975); *Kleban v. Morris*, 363 Mo. 7, 247 S.W.2d 832, 837 (1952). Indeed, this Court has held that a statute will abrogate a governmental entity's immunity from tort liability only if the statute expressly so states. *State ex rel. Reg'l Justice Info. Serv. Com'n v. Saitz*, 798 S.W.2d 705, 708 (Mo. banc 1990); *Community Fed. Sav. & Loan v. Dir. of Revenue*, 752 S.W.2d 794, 796 (Mo. banc 1988). *See, e.g., Pratt*, 687 S.W.2d at 186–87 (holding that statutory provision granting a governmental entity the power to "sue or be sued" did not amount to an express waiver of sovereign immunity).

In its opinion, the majority concedes that the "intent of the legislature to waive sovereign immunity must be express rather than implied." Alas, the majority then concludes that an express legislative intent can be found in the ONHA, even though, as the majority further concedes, plaintiff's underlying private cause of action was itself created implicitly, rather than explicitly. Such a conclusion begs the following question: How can the legislature expressly waive sovereign immunity to a private cause of action that the legislature did not expressly create in the first place?

The court of appeals cases relied on by the majority do not provide an answer to this question and are readily distinguishable from the instant case. In both *Keeney v. Missouri Highway & Transportation Commission,* 70 S.W.3d 597 (Mo.App. 2002), and *H.S. v. Board of Regents,* 967 S.W.2d 665 (Mo.App.1998), the Missouri Human Rights Act (MHRA) was held to include a waiver of sovereign immunity to tort suits brought under the MHRA. However, in contrast to the majority opinion, the *Keeney* and *H.S.* courts found the existence of a waiver only after first recognizing that the MHRA expressly created a private cause of action. *Keeney,* 70 S.W.3d at 599–600 (citing section 213.111); *H.S.,* 967 S.W.2d at 673 (same). Likewise, the tax cases cited by the majority, *Sprint Communications Co. v. Director of Revenue,* 64 S.W.3d 832 (Mo. banc 2002), and *Matteson v. Director of Revenue,* 909 S.W.2d 356 (Mo. banc 1995), are distinguishable because under the statutes implicated in those cases, unlike here, the legislature expressly created a procedure by which individuals could seek redress from the State.

In my view, an express intent on the part of the legislature to waive sovereign immunity in tort suits brought by nursing home employees cannot be gleaned from the ONHA. Even assuming that creation of a private cause of action is implicit in section 198.070.10 as per *Clark,* I nevertheless cannot understand how the legislature can be said to have expressly intended to waive sovereign immunity to a cause of action that it did not expressly create. Even in the most favorable light, the majority's new-found waiver of sovereign immunity is nothing more than the product of an inference on an inference. Further, to the extent that *Clark* 's recognition of the private cause of action was based on public policy rather than statutory interpretation, the majority's ultimate finding of an express waiver of sovereign immunity is even more troubling.

For the foregoing reasons, I would affirm the judgment of the trial court.