Deborah RUSH, et al., Respondents,

v.

**SENIOR CITIZENS NURSING HOME DISTRICT OF RAY COUNTY, Missouri, d/b/a Shirkey Leisure Acres, et al., Appellants.**

No. WD 65474.

Missouri Court of Appeals,
Western District.

Nov. 21, 2006.

Application for Transfer to Supreme Court Denied Jan. 30, 2007.

Gary R. Bradley, Lexington, MO, Michael W. Blanton, Kansas City, MO, for Respondents.

Randall D. Thompson, Kansas City, MO, for Appellants.

Before HOWARD, C.J., and BRECKENRIDGE and HARDWICK, JJ.

VICTOR C. HOWARD, Chief Judge.

Senior Citizens Nursing Home District of Ray County, Missouri, et al. ("District" or collectively "Defendants") appeal the Circuit Court of Ray County's entry of judgment following a jury verdict in favor of Deborah Rush, et al. ("Plaintiffs") in the wrongful death suit against the Defendants for the death of their father, Walter Rush. The Defendants argue four points on appeal. In Point I, the District argues that the trial court erred in denying its motion for judgment notwithstanding the verdict because the District is protected from a wrongful death suit under the doctrine of sovereign immunity. In Point II, the Defendants Shelly Gordon ("Gordon") and Miney Bell ("Bell") argue that the trial court erred in denying their motions for directed verdict and judgment notwithstanding the verdict because each are protected under the doctrine of official immunity. In Point III, the Defendants Gordon and Bell argue that the trial court erred in denying their motions for directed verdict and judgment notwithstanding the verdict because Plaintiffs' evidence was insufficient as a matter of law to support a submissible case. In Point IV, the Defendants argue that the trial court erred in denying their motion for new trial because statements made by Plaintiffs' counsel during closing argument constituted plain error. For the reasons set forth below, the judgment of the trial court is affirmed.

### Standard of Review

■ The standard of review for denials of a motion for directed verdict and a motion for judgment notwithstanding the verdict are essentially the same. *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d

454, 456 (Mo. banc 2006). "A case may not be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence." *Id.* To determine whether evidence was sufficient to support the jury's verdict, "the evidence is viewed in the light most favorable to the result reached by the jury, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with that verdict." *Id.* at 456–57. We will reverse the jury's verdict because of insufficient evidence only if there is "a complete absence of probative fact to support" the verdict. *Id.* at 457.

### Factual and Procedural Background

Walter Rush was the father of Deborah Rush and Carla Ashinhurst, the plaintiffs in this action. Prior to his death, Mr. Rush was a resident at Shirkey Leisure Acres, a nursing home operated by the District. During his time at Shirkey Leisure Acres, Mr. Rush was under the care of Dr. John Scowley and received nursing care from several nurses, including Defendant Bell. Defendant Gordon was the Director of Nursing at Shirkey Leisure Acres and as Director was in charge of overseeing the nursing staff.

On May 31, 2002, Mr. Rush died as a result of diabetic coma.[1] Most of the facts leading up to Mr. Rush's death are undisputed. Mr. Rush entered Shirkey Leisure Acres suffering from diabetes and Alzheimer's. Due to his Alzheimer's dementia, he was unable to regulate his own diet and was dependent upon the Shirkey Leisure Acres staff. Mr. Rush's diabetes was regulated by regular testing of his blood sugar and the administration of insulin when necessary. On December 27, 2001, Dr. Scowley entered an order that required Mr. Rush's blood sugar to be tested four times a day. Pursuant to this order, insulin was administered to Mr. Rush based on a sliding scale order ("Sliding Scale Order"). Under the Sliding Scale Order, Mr. Rush was to receive no insulin if his blood sugar was under 200. He was to automatically receive two units of insulin if his blood sugar was between 201 and 250; four units if it was between 251 and 300; six units if it was between 301 and 350; and eight units if it was between 351 and 400. On February 27, 2002, this Sliding Scale Order was modified so that his blood sugar was to be checked daily and more frequently based on his condition; however, the Plaintiffs argued that the actual administration of the insulin on a sliding scale was not modified.[2]

Prior to his death, Mr. Rush's blood sugar continued to be tested. However, on April 30, 2002, when Mr. Rush's blood sugar tested 250, no insulin was administered. On May 15, 2002, his blood sugar tested 202; May 16 it tested 214; May 17 it tested 200; May 19 it tested 280; and May 20 it tested 322—yet no insulin was administered on any of these days as required by the Sliding Scale Order. On May 21, Mr. Rush was under the care of Defendant Bell. Bell tested Mr. Rush's blood sugar that day at 493 and 540, but at no time administered any insulin.[3] On

---

1. Although the cause of death was contested at trial, as discussed above, on appeal evidence is viewed in the light most favorable to the jury's verdict. *Giddens v. Kansas City Southern Ry. Co.,* 29 S.W.3d 813, 818 (Mo. banc 2000).

2. The Defendants argue that the Sliding Scale Order had been discontinued and evidence was presented on both sides regarding this issue. However, on appeal evidence is viewed in the light most favorable to the jury's verdict. *Giddens v. Kansas City Southern Ry. Co.,* 29 S.W.3d 813, 818 (Mo. banc 2000).

3. Bell testified that she attempted to contact Dr. Scowley at his office, but her calls were never answered or returned.

May 22, 2002, Mr. Rush, found unresponsive, was finally administered insulin and transferred to the hospital, where he died on May 31, 2002.

The Plaintiffs filed this wrongful death action against the Defendants. After a four-day trial, the jury returned a verdict in favor of the Plaintiffs. The trial court entered judgment and thereafter the Defendants filed a motion for judgment notwithstanding the verdict.[4] The trial court denied the motion and this appeal follows.

## Discussion

### I. Sovereign Immunity

■ At issue in the District's Point I is whether the Omnibus Nursing Home Act, RSMo. section 198.003 et seq.[5] ("the Act") waived the sovereign immunity of a nursing home district created under RSMo. sections 198.200 et seq. It is undisputed that the District is such a nursing home district. This issue involves the interpretation of statutes and their application, which are questions of law. *McKinney v. State Farm Mut. Ins.*, 123 S.W.3d 242, 245 (Mo.App. W.D.2003) (citations omitted). Our review of questions of law is *de novo*. *Id.*

The District argues that the Act does not waive sovereign immunity for nursing home districts in medical malpractice cases. The Plaintiffs argue that the Missouri Supreme Court held in *Bachtel v. Miller County Nursing Home District*, 110 S.W.3d 799 (Mo. banc 2003), that sovereign immunity was waived for nursing home districts by the Act. We agree with Plaintiffs.

In *Bachtel*, two nursing home employees alleged wrongful discharge in retaliation for reporting violations of the Act. *Id.* at

800. The trial court in *Bachtel* had dismissed the plaintiffs' claims because of sovereign immunity. *Id.* The Missouri Supreme Court reversed this holding stating:

> Although the Act provides that it shall not apply to most state or state-licensed facilities, it specifically expressly provides that the provisions of the Act apply to nursing home districts, such as the Miller County district. In the absence of a provision excepting the provisions prohibiting retaliation against employees who report violations of the Act, those sections too necessarily apply to nursing home districts. This express provision that the Act is applicable to nursing home districts constitutes a waiver of sovereign immunity to the extent necessary to enforce the provisions of the Act as to those districts, including the right to bring a private right of action against nursing home districts who retaliate against employees in violation of the Act.

*Id.* Although *Bachtel* was about retaliatory firings of nursing home employees, the Missouri Supreme Court's holding clearly extends to any provision of the Act, including the provision that provides for private rights of action. *See* RSMo. § 198.093; *Stiffelman v. Abrams*, 655 S.W.2d 522, 528 (Mo. banc 1983).

In *Bachtel*, the court began its analysis by discussing the intent of the legislature in passing the Act. 110 S.W.3d at 801. It noted that one of the key purposes of the Act was to "provide protection to those individuals who are unlikely, or unable, to protect themselves." *Id.* The court went on to explain that section 198.012.1(2) expressly made all provisions of the Act applicable to nursing home districts. *Id.* at

---

4. The Defendants also filed motions for directed verdict at the close of the Plaintiffs' evidence and at the close of all of the evidence. Both of these motions were denied.

5. All statutory references are to RSMo.2000 unless otherwise noted.

803. For this holding, the court quoted the exact language of section 198.012.1(2), in pertinent part:

The provisions of section 198.003 to 198.136 [the Act] shall not apply to any of the following entities:

(1) ....

(2) Any facility or other entity otherwise licensed by the state and operating exclusively under such license and within the limits of such license, *unless the activities and services are or are held out as being activities or services normally provided by a licensed facility under section 198.003 to 198.186, 198.200 [nursing home districts],* 208.030, and 208.159, RSMo, except hospitals licensed under the provision of chapter 197, RSMo.

*Id.* (emphasis added in original).

■ It is clear to us that the *Bachtel* reading of the Act extends to this case. Otherwise, as noted in *Bachtel*, "[a]ny other reading of the statute would treat nursing home districts differently from private nursing homes, contrary to the express intent of the legislature that the Act should be fully applicable to nursing home districts." Therefore, we hold that the Act waives the sovereign immunity of the District and affirm the trial court's holding. Point I is denied.

## II. Official Immunity

■ In Point II, Defendants Gordon and Bell argue that they are protected by the common law doctrine of official immunity. "Official immunity protects public officials from liability for alleged acts of ordinary negligence committed during the course of their official duties for the performance of discretionary acts." *Davis v. Lambert–St. Louis Int'l Airport,* 193 S.W.3d 760, 763 (Mo. banc 2006). Although the Defendants and Plaintiffs argue numerous different issues on appeal regarding official immunity, we do not address these issues because we find that the acts by Defendants Gordon and Bell were ministerial and, therefore, are not provided the protection of official immunity.[6]

■ Whether a function is discretionary or ministerial is a case-by-case determination. *Charron v. Thompson,* 939 S.W.2d 885, 886 (Mo. banc 1996). Under the applicable standard of review, all evidence is viewed in the light most favorable to the jury's verdict. *Dhyne,* 188 S.W.3d at 456–57. To determine whether an act is discretionary or ministerial, the court looks at the "degree of reason and judgment required to perform the act." *Davis,* 193 S.W.3d at 763. If an act requires the exercise of reason and discretion to determine how or whether to act, it is discretionary. *Id.* On the other hand, an act is ministerial if it is "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Id.* (citations omitted). Three factors are considered in determining whether an act is ministerial or discretionary: "(1) the nature of the duties; (2) how much policymaking or professional expertise and judgment the act involves; and (3) the consequences of withholding immunity." *Id.*

In *Geiger v. Bowersox,* a prison nurse's duties were found to be ministerial because they only entailed following the prescribed prison policy. 974 S.W.2d 513, 517 (Mo.App. E.D.1998). Her actions did not involve any policymaking or the exercise of professional expertise or judgment; she

---

**6.** One of the arguments presented is whether *Bachtel* should be read to waive official immunity also. Because we find that the Defen-

dants were performing ministerial acts, we do not address this question here.

was simply to follow the prison's policy. *Id.*

Like the prison nurse in *Geiger,* Defendant Bell was only to follow a set policy, the Sliding Scale Order. In following this order, she was not required to exercise any professional expertise or judgment. If Mr. Rush's blood sugar tested in a certain range, a certain amount of insulin was to be administered. In fact, Defendant Gordon testified that nurses are not given any latitude with respect to following a physician's order. The Plaintiffs allege that Defendant Bell was negligent in not following the Sliding Scale Order. Therefore, the acts that are alleged to have been negligent are ministerial in nature and Defendant Bell is not protected by official immunity.

As for Defendant Gordon, although part of her duties were policymaking, this is not the type of negligence alleged by the Plaintiffs. Instead, like Defendant Bell, it is alleged that Defendant Gordon was negligent in not following the Sliding Scale Order and administering insulin to Mr. Rush.[7] Therefore, like Defendant Bell, the acts alleged to have been negligent are ministerial in nature and Defendant Gordon is not protected by official immunity.

### III. Evidence Insufficient as Matter of Law

In Point III, Defendants Gordon and Bell argue that the trial court erred in not granting their motions for directed verdict and judgment notwithstanding the verdict because the evidence was insufficient as a matter of law to support a submissible case of negligence. In particular, they allege that there was no expert medical testimony that (1) they failed to meet the requisite standard of medical care, (2) that they acted negligently or

failed to act and (3) their alleged negligence directly caused or contributed to Mr. Rush's death.

In deciding whether there was sufficient evidence to support a jury's verdict, the evidence is viewed in the light most favorable to the verdict. *Giddens v. Kansas City Southern Ry. Co.,* 29 S.W.3d 813, 818 (Mo. banc 2000). All reasonable inferences are drawn in favor of the verdict, and evidence that is in conflict with the verdict is disregarded. *Dhyne,* 188 S.W.3d at 456–57. In order to prevail in a medical malpractice action, the Plaintiffs must establish: "1) an act or omission of the defendant failed to meet the required standard of care; 2) the defendant was negligent in the performance of the act or omission; and 3) the act or omission caused the plaintiff's injury." *Montgomery v. S. County Radiologists, Inc.,* 168 S.W.3d 685, 691 (Mo.App. E.D.2005). We will reverse the jury's verdict for insufficient evidence "only where there is a complete absence of probative fact to support the jury's conclusion." *Giddens,* 29 S.W.3d at 818. After reviewing the record, we hold that there is not a "complete absence of probative fact" supporting the jury's verdict. Therefore, we affirm the trial court's denial of the motions for directed verdict and judgment notwithstanding the verdict.

Defendants Bell and Gordon first argue that the evidence was insufficient because there was no expert testimony presented by the Plaintiffs that they had failed to meet the requisite standard of medical care. However, the Plaintiffs are correct in their assertion that expert testimony is not required when a defendant's own testimony establishes the standard of care or the alleged negligence is a nurse's failure

---

7. Although Defendant Gordon was not directly tending to Mr. Rush, Defendant Gordon testified that part of her duties included monitoring the nursing staff and making sure that care plans were followed.

to follow doctor's orders. *See Redel v. Capital Region Med. Ctr.,* 165 S.W.3d 168, 173 (Mo.App. E.D.2005). Defendant Gordon herself testified that if the Sliding Scale Order had been in effect, then not administering insulin when Mr. Rush's blood sugar exceeded 200 was below the standard of care. In addition to Defendant Gordon's testimony, there was testimony by the Defendants' expert that it was a breach of the standard of care not to administer the insulin in accordance with the Sliding Scale Order.[8] Therefore, the Plaintiffs provided sufficient evidence that Defendants Gordon and Bell failed to meet the requisite standard of care and we affirm the trial court's denial of the motions.[9]

Defendants Gordon and Bell next argue that there was no expert testimony that they failed to act or acted negligently. We note in reviewing the trial court's denial of the motions for directed verdict and judgment notwithstanding the verdict, the Plaintiffs are entitled to all inferences in favor of the verdict, not only provided by their witnesses, but also by evidence provided by the Defendants' witnesses. *See Stallman v. Robinson,* 364 Mo. 275, 260 S.W.2d 743, 749 (1953). As previously discussed, there was ample testimony that failure to administer insulin in accordance with the Sliding Scale Order was below the standard of care. Defendant Gordon and Bell both testified that they did not administer insulin to Mr. Rush on May 21. Therefore, there was testimony from which the jury could find that Defendants Bell and Gordon failed to act or acted negligently.

Finally, Gordon and Bell argue there was no expert testimony that their alleged negligence directly caused or contributed

to Mr. Rush's death. Like most medical malpractice cases, this case became a battle of the experts. "This court will not second-guess whom the jury chooses to believe, as we leave issues of credibility and the weight to be afforded conflicting evidence to the jury." *Davolt v. Highland,* 119 S.W.3d 118, 127 (Mo.App. W.D.2003). Since the jury found in favor of the Plaintiffs, it can be inferred that the jury believed the Plaintiffs' expert testimony that it was a diabetic coma that caused Mr. Rush's death and that this diabetic coma was caused by failure to provide adequate care in time. Although the Plaintiffs' expert did not point a finger directly at the Defendants, there was adequate testimony provided from which a jury could find that Defendants Gordon and Bell's negligence caused Mr. Rush's death. Therefore, we affirm the trial court's denial of the motions.

## IV. Plain Error in Closing Argument

■■■ The Defendants' final point on appeal is that the trial court erred in denying the motion for new trial because statements made by Plaintiffs' counsel during closing argument constituted plain error because they were not based upon evidence and injected the issue of punitive damages. Since the Defendants did not object to the Plaintiffs' closing argument during the trial, the only recourse left is plain error review under Rule 84.13(c). Plain error review is rarely granted in civil cases. *Davolt,* 119 S.W.3d at 135. We find that this is not a case where plain error review is justified.

■■■ Rule 84.13(c) provides: "Plain errors affecting substantial rights may be considered on appeal, in the discretion of

---

8. The Plaintiffs' counsel read portions of the Defendants' expert's deposition to the jury.

9. There was also testimony by a Plaintiffs' expert that the failure to contact the treating physician when Mr. Rush's blood sugar level reached a certain point was below the standard of care.

the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." However, not all prejudicial error is deemed "plain error." *Davolt,* 119 S.W.3d at 135. A trial court will only be reversed when there has been manifest injustice or a miscarriage of justice. *Id.* at 136. In order for there to be manifest injustice or a miscarriage of justice, the error "should weaken the very foundation of the process and seriously undermine confidence in the outcome of the case." *Id.*

 "Rarely will comments made during closing argument rise to the level of plain error entitling a party to relief." *Morgan Publ'ns, Inc. v. Squire Publishers, Inc.,* 26 S.W.3d 164, 170 (Mo.App. W.D. 2000). This is because "the decision to object is often a matter of trial strategy." *State v. Edwards,* 116 S.W.3d 511, 536 (Mo. banc 2003) (citations omitted). Therefore, a verdict will be reversed only when the moving party has "established that the argument had a decisive effect on the outcome of the trial and amounts to manifest injustice." *Id.* at 537. The trial court has broad discretion regarding closing arguments and closing arguments are not viewed in isolation. *Id.*

We find that the Defendants have failed to show that there has been a "manifest injustice or a miscarriage of justice." After reviewing the record, there was ample evidence presented that supports the jury's verdict, including testimony of life expectancy and possible pain and suffering experienced by Mr. Rush. It is left to a jury to assess damages. Although the amount of damages awarded was equal to an estimate of the nursing home's monthly income,[10] this, without more, does not prove a "manifest injustice or a miscar-

riage of justice." Therefore, we affirm the trial court's denial of a mistrial.

### Conclusion

In conclusion, we affirm the trial court's entry of judgment. We hold that the Omnibus Nursing Home Act waived the District's sovereign immunity. Defendants Gordon and Bell were not protected by official immunity because the negligent acts alleged were ministerial in nature. We find that there was sufficient evidence presented to submit the case to the jury, and, finally, that there was no plain error made by Plaintiffs' counsel during closing argument.

For the above reasons, the judgment of the circuit court is affirmed.

BRECKENRIDGE and HARDWICK, JJ., concur.

---

**10.** 200 beds at approximately $3,000 a bed per month, or $600,000, the amount of the jury's award.