**OLIN CORPORATION, Respondent,**

**and**

**United States of America, Intervenor,**

v.

**DIRECTOR OF REVENUE, Appellant.**

**No. 79180.**

Supreme Court of Missouri,
En Banc.

May 27, 1997.

Jeremiah W. (Jay) Nixon, Attorney General, John R. Munich, James R. McAdams, Alana M. Barragan–Scott, Assistant Attorneys General, Jefferson City, for Appellant.

Edward T. Perelmuter, Tax Division, U.S. Department of Justice, Washington, DC, Barbara B. Clark, Assistant U.S. Attorney, Kansas City, for Intervenor.

Thomas J. McMahon, Jefferson City, for Respondent.

LIMBAUGH, Judge.

This case arises from the Director of Revenue's (the Director) denial of a refund of sales and use taxes paid on Respondent Olin Corporation's (Olin) purchases of tangible personal property during its performance of a contract with the United States Government (the government). The Administrative Hearing Commission (AHC) concluded that Olin was not only entitled to a refund for the taxes paid during the claim period of November 1985 through 1988, but also was not liable for additional taxes assessed by the Director for part of this same period. The Director then filed a petition for review in this Court. We have jurisdiction because this case involves the construction of the revenue laws of this state. Mo. Const. art. V, sec. 3. The decisions of the AHC are affirmed.

During the claim period, Olin operated and maintained the Lake City Army Ammunition Plant, manufacturing small-caliber ammunition for the government under a management and operation contract (the contract). The contract was a "cost plus award fee contract" whereby Olin received an annual fee in addition to reimbursement for the costs of operating the plant. Olin was required to furnish all equipment, supplies, and materials sufficient and adequate to operate and maintain the plant. To fulfill this requirement, Olin purchased, in its own name, tangible personal property needed for the operation of the plant. The purchase orders used by Olin to buy this property provided that title to the purchased property passed directly from the vendor to the government upon the vendor's delivery of the property. In addition, the contract incorporated numerous provisions of the Federal Acquisition Regulations (FAR) including FAR 52.245–5, which applies to cost-reimbursement contracts. Subdivision (c)(2), the portion of this regulation relevant to the contract, also provides that title to property purchased by Olin shall vest in the government upon the vendor's delivery of such property.

The parties disagree on the issue of Olin's liability for sales and use taxes on the purchases of personal property used to perform the contract obligations. Olin argues that it had an ownership interest in the property that it then resold to the government, thereby placing its purchases of personal property within the resale exemption to sales and use taxes. See secs. 144.010(8) and 144.615(6), RSMo 1986. The Director takes the position, though, that Olin's use of the personal property in the performance of the contract established an ownership interest that is not resold to the government and, thus, is subject to sales and use taxes. We dispose of the case, however, without addressing the resale issue because we find that Olin never engaged in a transaction that subjected it to sales or use tax liability.

 Missouri sales and use taxes are complementary tax schemes that "are designed to assure that purchases of tangible personal property for valuable consideration by a Missouri purchaser receive identical tax treatment no matter what the geographic location of the seller." *House of Lloyd, Inc. v. Director of Revenue*, 884 S.W.2d 271, 273 (Mo. banc 1994). A sales tax is imposed on sales at retail that take place within the State of Missouri. Sec. 144.020, RSMo 1986. In contrast, the use tax is designed to tax out-of-state purchases of tangible personal property by Missouri residents who use the property within the state. Under the sales tax scheme, a sale at retail is defined as "any transfer ... of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale ... for a valuable consideration." Sec. 144.010(8). Under the use tax scheme, a purchase is defined as "the acquisition of the ownership of, or title to, tangible personal property." Sec. 144.605(5), RSMo Supp. 1992. It is thus clear that under both the sales and use tax statutes, the event giving rise to taxation is the transfer of title or ownership.

 Both parties agree that based on the passage of title provisions in the contract and purchase orders, no title was transferred to Olin by its vendors when it purchased the property in question for the performance of the contract. The issue, then, is whether an ownership interest was transferred to Olin. This Court addressed this very question under similar facts in *State ex rel. Thompson–*

*Stearns–Roger v. Schaffner,* 489 S.W.2d 207 (Mo.1973). In *Thompson–Stearns–Roger,* a federal contractor argued that it was entitled to a refund of Missouri sales tax it paid on purchases of personal property bought in performance of its contract with the United States to rehabilitate and construct a manufacturing facility. Both the contract and the purchase orders used to buy the personal property provided that title to the property passed directly from the contractor's vendors to the government. *Id.* at 214. In analyzing the contractor's claim, this Court determined that the transfer of an ownership interest, as opposed to transfer of title, is alone sufficient to give rise to a taxable transaction. *Id.* at 215. After defining ownership as the right to exercise dominion or control over a thing, this Court held that the contractor at issue exercised dominion and control over the property it purchased through its ability to designate who was to receive title and, thereby, acquired an ownership interest. *Id.*

While in some cases it may be true that the ability to designate who will receive title is a sufficient indicator of ownership, no such ability exists under the facts of the present case. Olin was required by its contract with the government to designate that the government receives title to property purchased by Olin to perform the contract, and Olin's issuance of purchase orders to its vendors specifying this transfer of title was simply a fulfillment of a contractual obligation. Because Olin had no discretion in this matter, and no actual ability to designate who would receive title, it had no ownership interest in the property. To the extent that *Thompson–Stearns–Roger* found an ability to designate title based on virtually identical facts, it is overruled.

The Director takes the position that the ability to use the purchased property provides Olin with sufficient dominion and control to constitute ownership. The fallacy of this position, however, is that Olin's use of the property is severely limited because strict contract specifications preclude Olin from using the property in any manner inconsistent with those specifications. In fact, the contract includes detailed and comprehensive provisions on the acquisition, storage, consumption, utilization, maintenance and disposition of the property, and Olin is permitted to use the property only for those purposes authorized in the contract. Further, the undisputed evidence presented to the AHC, through the affidavit of a military officer assigned to the plant, was that the government had absolute discretion in the utilization of the purchased property, including how, where, and when the property was to be used. Under these facts, we hold that Olin could not exercise the necessary dominion or control over the property to have acquired ownership of the property.

In the absence of any contrary evidence, it is only logical to conclude that once the transfer of title to the government took place, the government also obtained all ownership interest in the property. Indeed, at common law, title is prima facie evidence of ownership. *Missouri Mexican Products, Inc. v. Dunafon,* 873 S.W.2d 282, 285 (Mo. App.1994). Although title and ownership will not always be held by the same entity, these interests will usually be acquired simultaneously by the same entity.

For the foregoing reasons, we conclude that Olin never acquired either ownership or title to the personal property it purchased in the performance of its contract with the government. In the absence of a transfer of title or ownership to Olin, Olin's purchases did not give rise to a taxable transaction;[1] thus, no sales or use taxes were due. Having reached this determination we do not need to address whether Olin met the resale exemption to the sales or use taxes. The decisions of the AHC are affirmed.

HOLSTEIN, C.J., ROBERTSON and COVINGTON, JJ., DIAL and PARRISH, Special Judges, and McHENRY, Senior Judge, concur.

BENTON, PRICE and WHITE, JJ., not sitting.

---

1. We note that the transfer of title and ownership to the government is a potentially taxable transaction, except for the fact that Missouri cannot tax the federal government.