DYNO NOBEL, INC., Appellant,

v.

DIRECTOR OF REVENUE,
Respondent.

No. SC 83505.

Supreme Court of Missouri,
En Banc.

April 23, 2002.

B. Derek Rose, Juan D. Keller, St. Louis, Edward F. Downey, Jefferson City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Alana M. Barragan–Scott, Asst. Atty. Gen., Jefferson City, for respondent.

WILLIAM RAY PRICE, JR., Judge.

Dyno Nobel, Inc. ("Dyno") seeks review of the decision of the Administrative Hearing Commission (the "Commission") denying its claim for a refund of use taxes paid to the Director of Revenue (the "Director"). Dyno adequately presented its claim for a use tax refund, use taxes cannot be assessed against the intrastate transactions at issue, and the Director cannot claim the use taxes paid as sales taxes because no assessment for sales tax was made. The decision is affirmed in part, reversed in part, and the case is remanded.

## I.

Dyno is a Delaware corporation doing business in Missouri. In 1985, Dyno entered into an asset purchase agreement with Hercules, Inc. ("Hercules") whereby Dyno obtained part of a chemical manufacturing facility. The facility was originally designed for one occupant and is served by an on-site utilities plant that provides the facility with water, steam, and electricity. The plant is owned by Hercules and is located on its part of the facility. Dyno and Hercules both use the water, steam, and electricity produced by the plant.

The two companies entered into a utilities agreement on June 10, 1985, under which Dyno was to pay forty-five percent of the total allocated utility cost for the entire facility. The utilities agreement repeatedly refers to the "sale" and "transfer of title" of utilities, including electricity, from Hercules to Dyno, as well as indicating that the facility is located near Louisiana, Missouri.[1]

Hercules invoiced Dyno monthly for Dyno's utility costs. Hercules has never charged Dyno sales or use tax on the payments for electricity and Dyno has never provided Hercules with any certificate of tax exemption. For the tax periods at issue in this refund, Dyno remitted use tax on the payments for electricity, including the fixed costs and variable costs.

On November 20, 1997, Dyno filed its refund claim with the Director for taxes paid from October 1994 through September 1997. The refund claim stated: "Taxes were incorrectly accrued on purchases that were not taxable to Dyno Nobel, Inc." Dyno attached to its refund claim the invoices showing its payments for electricity. On December 16, 1997, the Director sent Dyno a letter requesting additional invoices and a more detailed explanation as to why the transactions were not taxable. In January 1998, Dyno sent a letter to the Director with the following explanation:

Dyno Nobel, Inc. is requesting a refund for use taxes that were incorrectly accrued on purchases that were not taxable. Dyno Nobel entered into a cost sharing agreement with Hercules, Inc. over the electricity generated at the Hercules plant. The agreed-upon percentage set forth in the cost sharing agreement is 45% of fixed costs and a percentage of variable costs based on usage; therefore, Dyno Nobel pays Hercules 45% of the cost to generate electricity at the Hercules plant. The costs include all inputs such as labor, overhead, and coal. Hercules pays the full amount of use tax on taxable inputs such as coal and includes those taxes as part of its cost basis. However, for the peri-

1. An auditor from the Department of Revenue visited Dyno's facility in November 1998. While the auditor did not review Dyno's re-

fund claim, the auditor spent several days at the facility and was aware of its setup and location.

od October 1994 through September 1997, Dyno Nobel accrued the use tax as well on the full amount of the electricity it used. As a result, tax has been paid on the same items twice. Dyno Nobel is simply requesting a refund on taxes that should never have been paid.

On April 10, 1998, the Director received amended returns from Dyno indicating that the correct amount of the refund should be $85,225.64 for the entire period.

On November 12, 1999, the Director issued a final decision denying the claim because the "[c]orrect amount of tax was paid by Dyno Nobel, Inc." Dyno sought review of the Director's decision before the Commission. Both Dyno and the Director sought a summary determination. After oral argument, the Commission found that Dyno had given the Director proper notice of its refund claim and that Dyno was purchasing electricity from Hercules for which it owed sales tax and not use tax. The Commission denied Dyno's request for a refund, holding that the amounts paid could be credited toward the unpaid sales tax.

## II.

The determinations of the Commission will be upheld if they are authorized by law and supported by competent and substantial evidence upon the whole record. *Kansas City Royals Baseball Corp. v. Director of Revenue*, 32 S.W.3d 560, 562 (Mo. banc 2000).

## A.

Section 144.190.2, RSMo Supp. 2001, states that "If any tax .... has been erroneously or illegally collected, or has been erroneously or illegally computed, such sum shall be credited on any taxes

then due from the person legally obligated to remit the tax. .... "*See* section 144.696, RSMo 2000 (noting that "Section 144.190, pertaining to the refund of overpayments, claims for refund, and the time within which refunds shall be claimed, is applicable to the tax levied under the compensating use tax law.") Section 144.190.3, RSMo Supp.2001, provides that "[e]very claim for refund must be in writing and signed by the applicant, and must state the specific grounds upon which the claim is founded." This procedure was designed so that the Director would be apprised of the grounds of the refund claim so that a meaningful determination of the issues presented by the taxpayer could be made. *St. Louis Southwestern Railway Co. v. State Tax Com'n*, 713 S.W.2d 830, 832 (Mo. banc 1986). Any issue not presented to the Director in the claim for refund may not be presented to the Commission. *Matteson v. Director of Revenue*, 909 S.W.2d 356, 360 (Mo. banc 1995).

While it is true that the refund request and subsequent clarification submitted by Dyno were not artfully drafted, they were sufficient to apprise the Director of the grounds presented for the refund, and allowed for a meaningful determination of those issues. The initial request for refund made clear that Dyno was claiming that the utilities obtained from Hercules were "purchases that were not taxable." The information before the Director, including the utility agreement and the information about the facility acquired by the Director's own auditor, obviously showed that the transaction occurred completely within Missouri and that sales tax, rather than use tax, was at issue. *See* section 144.020, RSMo Supp.2001; [2] and

---

**2.** Section 144.020.1 provides that:
A tax is hereby levied and imposed upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in

section 144.610, RSMo 2000.[3]

■ Use tax and sales tax are designed to complement one another. *House of Lloyd, Inc. v. Director of Revenue*, 884 S.W.2d 271, 274 (Mo. banc 1994). Holding that Dyno's refund request provided adequate notice to the Director does not conflict with prior rulings on this issue, as those cases involved claims that were completely separate from the claims pursued in the original request for refund. *See Kansas City Royals Baseball Corp.*, 32 S.W.3d at 563 (yearbooks resold at the stadium by vendors were in no way related to "incentive items" given away for free and therefore could not be the basis for a refund without being mentioned in the request to the Director); *Matteson*, 909 S.W.2d at 360 (taxpayer's broad claim to the Director that non-Missouri source income cannot be included to calculate the rate of tax on timber profits did not include claim that military pension received by the taxpayer should not be taxed). The Commission did not err in reviewing Dyno's refund claim.

### B.

■ This Court noted in *Olin Corp. v. Director of Revenue*, that:

> Missouri sales and use taxes are complementary tax schemes that 'are designed to assure that purchases of tangible personal property for valuable consideration by a Missouri purchaser receive identical tax treatment no matter what the geographic location of the seller.'

*House of Lloyd, Inc. v. Director of Revenue*, 884 S.W.2d 271, 273 (Mo. banc 1994). A sales tax is imposed on sales at retail that take place within the State of Missouri. Sec. 144.020, RSMo 1986. In contrast, the use tax is designed to tax out-of-state purchases of tangible personal property by Missouri residents who use the property within the state.

945 S.W.2d 442, 443 (Mo. banc 1997). It is clear that the transfer of electricity between Hercules and Dyno occurred within the State of Missouri and was not a transfer subject to use tax. The Director acknowledged during oral argument that, in hindsight, these transactions involve sales tax and not use tax. *See* section 144.020 and section 144.610. Because Dyno was not required to pay use tax on these transactions, it is entitled to a "credit" on its current taxes in the amount of $85,225.64, the use taxes paid during the period at issue. Section 144.190.2. Any surplus balance, "with interest as determined by section 32.065, RSMo," shall be refunded to it. Section 144.190.2.

### C.

■ The Director contends, and the Commission agreed, that even if these transactions were not subject to use tax, they were sales of electricity from Hercules to Dyno that are subject to sales tax. The Director argues that the amounts paid by Dyno as use taxes should be credited toward the unpaid sales tax. The Director, however, has not made a sales tax

this state. The rate of tax shall be as follows....
(3) A tax equivalent to four percent of the basic rate paid or charged on all sales of electricity or electrical current ....to domestic, commercial, or industrial consumers....

**3.** Section 144.610.1 provides that "A tax is imposed for the privilege of storing, using or consuming within this state any article of tangible personal property. ...." This Court has noted that use taxes apply only to purchases from a seller outside the state. *Lincoln Industrial Inc. v. Director of Revenue,* 51 S.W.3d 462, 464 (Mo. banc 2001).

assessment against Dyno as required by section 144.250, RSMo 2000.[4] Further, while the purchaser is required to pay sales tax to the seller, section 144.060, RSMo 2000, the ultimate responsibility for the remittance of sales tax to the Director lies with the seller, in this case Hercules, and not the purchaser. Section 144.080.1, RSMo 2000; *Sprint Communications Co. v. Director of Revenue*, 64 S.W.3d 832, 834–35 (Mo. banc 2002). The Commission was incorrect in denying Dyno's refund based on the alleged unpaid sales tax.

### III.

The decision of the Commission is affirmed in part, reversed in part, and the case is remanded.

LIMBAUGH, C.J., WHITE, WOLFF, BENTON and LAURA DENVIR STITH, JJ., AHRENS, Sp.J., concur.

TEITELMAN, J., not participating.

---

4. Section 144.250.4, RSMo 2000, provides that:

> Except in cases of fraud or evasion, if a person neglects or refuses to make a return and payment as required by sections 144.010 to 144.525, the director of revenue *shall* make an estimate based upon any information in his possession or that may come into his possession of the amount of the gross receipts of the delinquent for the period in respect to which he failed to make return and payment, and upon the basis of said estimated amount compute and assess the tax payable by the delinquent. .... (emphasis added)

Section 144.250.5, RSMo 2000, provides that "[p]romptly thereafter, the director of revenue *shall* give to the delinquent written notice of such estimated assessment. ...." (emphasis added).