**FORD MOTOR COMPANY, d/b/a American Road, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

**No. SC 84523.**

Supreme Court of Missouri,
En Banc.

Jan. 14, 2003.

Rehearing Denied March 4, 2003.

Jeremiah W. (Jay) Nixon, Atty. Gen., Erwin O. Switzer, III, Asst. Atty. Gen., St. Louis, for Appellant.

James C. Owen, Katherine S. Walsh, Chesterfield, for Respondent.

RICHARD B. TEITELMAN, Judge.

The Director of Revenue (Director) seeks review of the decision of the Administrative Hearing Commission (Commission) that Ford Motor Company (Ford) is entitled to a refund of use taxes.

This Court has jurisdiction. *Mo. Const. art. V, section 3.* Ford's claim for a refund was not filed within the three-year limitations period of section 144.190.2.[1] The three-year limitations period of section 144.190.2 (as to erroneously or illegally

---

1. All statutory references are to RSMo 2000.

collected or computed tax) is started when the taxpayer remits payment of tax on the transactions that generate the issue of overpayment. The Commission's decision is reversed, and the case is remanded.

## Background

Ford is a Michigan corporation doing business in Missouri. Ford manufactures motor vehicles. This case involves Ford's Kansas City plant operations.

As of June 1993, Ford became a direct pay taxpayer, remitting sales/use tax directly to the Department of Revenue (Department) monthly.

Beginning in 1996, the Department conducted an audit of Ford's sales and use tax payments for October 1992 through September 1995. At no time during the audit did Ford contend that any taxes it had previously paid for the 1992–1995 tax periods were overpayments. The auditors determined that Ford failed to pay use taxes during the 1992–1995 tax periods on more than $17 million in purchases on which use taxes should have been paid. The taxes, plus interest, totaled $1,031,011.22.[2] Ford did not contest the audit findings and paid the total in February 1998.[3]

The Department then conducted an audit of the subsequent three years: October 1995 through December 1998. Ford hired a tax consultant for that audit, who found that Ford paid use taxes on exempt transactions during the 1992–1995 and 1995–1998 tax periods. The Director allowed credits for the 1995–1998 payments during the course of the audit. On November 17, 1999, Ford filed a refund claim for the 1992–1995 tax periods. The taxes that are the subject of Ford's refund claim were originally paid with returns filed between February 1993 and October 31, 1995. None of the transactions on which Ford claimed refunds were transactions on which it paid the post-audit tax in February 1998.

The Director and Ford executed a series of limitations-waiver letters, with the last one-year extension signed on November 10, 1997. That extension expired more than one year before Ford filed the refund claim.

The Director issued a final decision rejecting Ford's refund request for 1992–1995, on the basis that it was made outside the statutory limitations period. The Commission disagreed and concluded that Ford is entitled to the refund. The Director seeks review.

## Standard of review

 This Court reviews the Commission's interpretation of revenue law de novo. *Southwestern Bell Telephone Co. v. Director of Revenue*, 78 S.W.3d 763, 765 (Mo. banc 2002). The Commission's "factual determinations are upheld if they are supported by the law and, after reviewing the whole record, there is substantial evidence to support them." *Id.*

## Discussion

This case is governed by section 144.190.2, which provides:

> If any tax, penalty or interest has been paid more than once, or has been erroneously or illegally collected, or has been erroneously or illegally computed, such sum shall be credited on any taxes then due from the person legally obligated to remit the tax pursuant to sections

2. The Director agrees with Ford that at least $72,000.00 was audit error and that Ford is entitled to a refund of at least that much, regardless of the dispute in this case.

3. The Director concedes that, as to transactions covered by the payment in February 1998, the three-year period of section 144.190.2 began in February 1998.

144.010 and 144.510, and the balance, with interest as determined by section 32.065, RSMo, shall be refunded to the person legally obligated to remit the tax, but no such credit or refund shall be allowed unless duplicate copies of a claim for refund are filed within three years from date of overpayment.

Ford argues that, after its overpayment of use taxes for the 1995–1998 tax periods, it became entitled to claim a refund for the 1992–1995 tax periods within three years of the 1995–1998 tax periods overpayment. Ford seeks to have section 144.190.2 constructed so broadly as to allow a new unrelated overpayment to start a new three-year limitations period for refund claims, no matter how long ago the taxpayer filed the returns that are the subject of the refund claims.

The Director argues that the three-year limitations period is measured from the date of overpayment of the tax on transactions for which the refund is sought, noting that Ford's interpretation of the section could reward taxpayers who fail to pay their taxes on time.

The question is the meaning of "date of overpayment." The legislature did not provide explicit guidance as to the meaning within section 144.190.2. However, the legislature's intent and the meaning of "date of overpayment" is revealed by (1) the standard for statutory construction and (2) the context of the Missouri tax code.

■ First, section 144.190.2 must be strictly construed against the taxpayer. *Sprint Communications Co., L.P. v. Director of Revenue*, 64 S.W.3d 832, 834 (Mo. banc 2002).

As a general rule the sovereign need not refund taxes voluntarily paid even if illegally collected. Section 144.190, however, provides a limited waiver of sovereign immunity to allow the recovery of taxes, penalties, or interest paid that have been illegally or erroneously computed or collected. Statutory provisions waiving sovereign immunity are strictly construed, and when the state consents to be sued, it may prescribe the manner, extent, procedure to be followed, and any other "terms and conditions as it sees fit."

*Id.* (citations omitted).

Second, section 144.190.2 must be considered in context. Section 144.115 only requires the Director to keep sales and use tax returns (for taxes that have been paid) on file in his custody for four years after the sales or use tax becomes due. Moreover, section 144.190.2 is within a tax code that ties similar rights and obligations to the filing of a tax return and the payment of tax on the transactions at issue.

For income tax, section 143.711 provides that the Director may assess a deficiency if the notice of deficiency is mailed to the taxpayer within three years after the return was filed. Section 143.801 allows a taxpayer to file a claim for refund of income taxes within three years from the time the return was filed.

For sales tax, section 144.220.3 provides that "every notice of additional amount proposed to be assessed [by the Director] . . . shall be mailed to the person within three years after the return was filed or required to be filed."

For use tax, section 144.695 provides that if, "upon examination of any return, it appears that the taxpayer has paid an amount in excess of that properly due, the amount of the excess shall be credited. . . ."

For banking institutions, section 148.076.1 provides that a "claim for credit or refund of an overpayment . . . shall be filed by the taxpayer within three years

from the time the return was filed or two years from the time the tax was paid, whichever of such periods expires the later; or if no return was filed by the taxpayer, within two years from the time the tax was paid."

A strict construction of section 144.190.2, considered in the context of the Missouri tax code described above, does not allow for the permissive construction offered by Ford.

 Instead, the three-year limitations period of section 144.190.2 (as to erroneously or illegally collected or computed tax) is started when the taxpayer remits payment of tax on the transactions that generate the issue of overpayment. A subsequent payment for other transactions, even those occurring within the same tax period, does not extend the deadline or start a new three-year limitations period as to transactions on which tax was previously paid.

Ford has raised two additional arguments that were not addressed by the Commission because it found section 144.190.2 dispositive. Ford argues that the tax was "incorrectly computed by reason of a clerical error or mistake on the part of the director" such that section 144.190.1 would allow for a refund without a limitations period. Ford claims that the Directors' audit policies and procedures were a mistake because they did not emphasize discovery of Ford's potential refund claims. Section 144.190.1 applies to computational errors rather than to policies or procedures with which Ford disagrees. The Director's failure to actively investigate potential refund claims was not a clerical error or mistake.

Finally, Ford argues that it is entitled to a refund because the Director failed to provide valid consideration for the waiver of the statute of limitations. However,

this Court has held that such waivers should be given effect because they are not forbidden by law, they serve a proper purpose and because the taxpayer gains time for further examination of tax liability and the possibility of negotiation with the Director. *St. Louis Country Club v. Administrative Hearing Com'n,* 657 S.W.2d 614, 616–617 (Mo. banc 1983).

## Conclusion

Ford's claim for refund pursuant to section 144.190.2 was not timely filed. The Commission's decision that a refund is due because Ford's claim was timely filed pursuant to section 144.190.2 is reversed. The case is remanded.

All concur.