**LUCENT TECHNOLOGIES, INC., Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

**No. WD 62040.**

Missouri Court of Appeals, Western District.

Nov. 18, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 23, 2003.

Application for Transfer Denied Jan. 27, 2004.

James R. Layton, Jefferson City, MO, for appellant.

Peter F. Daniel, Kansas City, MO, for respondent.

Before JOSEPH M. ELLIS, Chief Judge, HAROLD L. LOWENSTEIN, Judge and PATRICIA BRECKENRIDGE, Judge.

JOSEPH M. ELLIS, Chief Judge.

The Director of Revenue for the State of Missouri appeals from a decision rendered by the Administrative Hearing Commission reversing the Director's decision to partially deny Respondent Lucent Technologies, Inc.'s request for a refund of local use taxes paid by its predecessor in

interest, AT & T, from April 1, 1993, through January 31, 1996. The Director contends that the Commission improperly awarded Respondent a refund of local use taxes that had been mistakenly reported by AT & T as sales tax on its sales tax returns. Viewed in the light most favorable to the Commission's award, the facts are as follows.

In *Associated Industries of Missouri v. Lohman,* 511 U.S. 641, 114 S.Ct. 1815, 128 L.Ed.2d 639 (1994), the United States Supreme Court, reversing the decision of the Missouri Supreme Court, held that § 144.748, RSMo Supp.1992, which applied an additional 1.5% tax on all transactions subject to the statewide use tax ("the local use tax"), impermissibly discriminated against interstate commerce in localities where that statute caused the use tax to exceed the state sales tax. *North Supply Co. v. Director of Revenue,* 29 S.W.3d 378, 378–79 (Mo. banc 2000). Subsequently, on remand from the U.S. Supreme Court, the Missouri Supreme Court "struck down sec. 144.748 in its entirety, having determined that the legislature clearly intended that the statute be applied uniformly throughout the state or not at all." *Id.* at 379 (citing *Associated Indus. of Mo. v. Director of Revenue,* 918 S.W.2d 780 (Mo. banc 1996)).[1]

Following the Missouri Supreme Court's decision, AT & T filed applications for refund of the local use taxes paid by the company between April 1, 1993, and January 31, 1996. The applications requested a total of $4,500,000.00 in refunds. As to the "reason for overpayment," AT & T stated:

> In accordance with the Missouri Supreme Court decision on March 26, 1996 declaring Statute 144.748 unconstitutional. This is a protective claim for refund being filed for the purpose of protecting the closing of the Statute of Limitations. Documentation is available to support this claim and will be provided at a latter [sic] date.

The application form asked applicants to "please attach a complete break down" and further stated, "You must submit supporting documentation."

On July 14, 1998, the Department of Revenue issued its final decision on Respondent's refund claim, refunding $1,242,539.33 in local use taxes paid by AT & T with interest. The Director arrived at that figure by referencing AT & T's tax returns over the relevant time period to determine how much AT & T had paid in use tax. The Director denied refund of the remaining $3,257,460.67 requested by AT & T in its applications for refund.

On September 14, 1998, Respondent filed an appeal to the Administrative Hearing Commission, challenging the Director's partial denial of its claims. In that petition, Respondent "protest[ed] the Director's disallowance on the basis that the Director did not refund the total amount of local use tax remitted for the periods covered by the claims." On April 18, 1999, Respondent filed its First Amended Complaint. In its amended pleading, Respondent argued that, while the Director had refunded local use tax for the amounts reported by AT & T to have been paid as use tax, the Director should also have refunded local use taxes on sums that AT & T had improperly reported as sales tax rather than vendor use tax on its returns.[2]

---

1. "Soon thereafter, and in apparent response to [the Missouri Supreme Court's decision striking down the statute], the legislature repealed sec. 144.748." *North Supply Co.,* 29 S.W.3d at 379.

2. " Missouri sales and use taxes are complementary tax schemes that 'are designed to assure that purchases of tangible personal property for valuable consideration by a Missouri purchaser receive identical tax treat-

Subsequently, the Director filed a motion for summary determination asking the Commission to reject Respondent's claim based upon the fact that Respondent had failed to raise the issue of the improperly reported taxes in its refund claim. The Director argued that Respondent had failed to inform the Department of Revenue of its claim that additional use tax had been paid that was not categorized as such on its returns. The Director claimed that Respondent's failure to raise this issue denied the Director the opportunity to meaningfully consider Respondent's claim for the additional $3,257,460.67 in refunds claimed on the applications for refund. On December 27, 2000, the Commission denied the Director's motion.

The Commission heard Respondent's claims against the Director on February 13, 2002. Subsequently, the Commission issued its decision finding that Respondent was entitled to further refund of $2,130,701.87 plus interest for local use taxes that had been paid by AT & T over the relevant period but had been improperly reported as sales tax.[3] The AHC found that Respondent had sufficiently stated the grounds for its claims by asserting that it was entitled to a refund of local use taxes that had been paid under § 144.748, which had been struck down by the Missouri Supreme Court as unconstitutional. The AHC stated:

> [W]e also believe we should not exalt form over substance in tax matters, and that a mere mistaken nomenclature as to a complementary tax should not preclude a refund. We do not regard Lucent as raising a new claim of exemption, but as simply mislabeling the type of tax. Lucent's claim is, and always has been, that it is entitled to a refund of unconstitutional local use tax. However, it reported the use tax on the wrong form.

\* \* \*

> We have concluded that the refund claim stated the grounds for the refund claim, as the statutes require. Contrary to the Director's argument, we do not read the specificity requirement so broadly that our review is precluded because the claim did not state that the vendor's use tax was reported on sales tax returns. We are somewhat sympathetic to the Director's argument that the Director had inadequate information to discern that the use tax was reported on sales tax returns. However, we believe that our ruling here is consistent with the statutory requirements of specificity, as well as the role of this Commission in conducting *de novo* review.

On appeal from that decision, the Director claims that the AHC erred in refunding additional amounts to Respondent because the refund request did not reflect that Respondent was claiming that the vendor's use taxes had been improperly

---

ment no matter what the geographic location of the seller.' " *Dyno Nobel Inc. v. Director of Revenue*, 75 S.W.3d 240, 243 (Mo. banc 2002) (quoting *Olin Corp. v. Director of Revenue*, 945 S.W.2d 442, 443 (Mo. banc 1997) (quoting *House of Lloyd, Inc. v. Director of Revenue*, 884 S.W.2d 271, 273 (Mo. banc 1994))). " 'A sales tax is imposed on sales at retail that take place within the State of Missouri.' " *Id.* (quoting *Olin Corp.*, 945 S.W.2d at 443). " 'In contrast, the use tax is designed to tax out-of-state purchases of tangible personal

property by Missouri residents who use the property within the state.' " *Id.* (quoting *Olin Corp.*, 945 S.W.2d at 443).

**3.** Prior to the hearing before the AHC, Respondent had filed amended returns and, based upon discovering transactions for which it could not establish whether the use tax or sales tax were applicable, reduced the additional amount which it was seeking in refunds from $3,257,460.67 to $2,130,701.87.

categorized as sales tax. The Director argues that the refund request did not reference any vendor's use tax being paid as sales tax and that, at the time the Director's final decision was rendered, Respondent had not provided the Director with sufficient information on which to determine whether and in what amount any refund of vendor's use tax could be paid.

When reviewing a decision rendered by the AHC, "[t]he Commission's 'factual determinations are upheld if they are supported by the law and, after reviewing the whole record, there is substantial evidence to support them.'" *Ford Motor Co. v. Director of Revenue,* 97 S.W.3d 458, 460 (Mo. banc 2003) (quoting *Southwestern Bell Tel. Co. v. Director of Revenue,* 78 S.W.3d 763, 765 (Mo. banc 2002)). " 'This Court considers only the evidence most favorable to the agency's decision, and essentially adopts the factual findings of the AHC.'" *Sprint Communications Co., L.P. v. Director of Revenue,* 64 S.W.3d 832, 834 (Mo. banc 2002) (quoting *Hermann v. Director of Revenue,* 47 S.W.3d 362, 364 (Mo. banc 2001)). But " '[d]ecisions on questions of law made by the AHC are matters for this Court's independent judgment.'" *Id.* (quoting *Hermann,* 47 S.W.3d at 364). Accordingly, "[t]his Court reviews the Commission's interpretation of revenue law de novo." *Ford Motor Co.,* 97 S.W.3d at 460.

The issues raised in this appeal hinge upon the Commission's interpretation of the provisions of § 144.190.3, RSMo 2000. Section 144.190 "provides a limited waiver of sovereign immunity to allow the recovery of taxes, penalties, or interest paid that have been illegally or erroneously computed or collected." [4] *Sprint Communications Co.,* 64 S.W.3d at 834. In order to receive such a refund, Section 144.190.3 requires "that '[e]very claim for refund must be in writing and signed by the applicant, and must state the specific grounds upon which the claim is founded.'" *Dyno Nobel Inc. v. Director of Revenue,* 75 S.W.3d 240, 242 (Mo. banc 2002).

The Commission held that the provision of § 144.190.3, requiring that every claim for refund specifically state the grounds upon which the claim is founded, was sufficiently satisfied by Respondent's claim that it was entitled to a refund of local use taxes that had been paid by it under § 144.748. The Commission held that Respondent was not required to aver in its application for refund that local use taxes had been improperly reported as sales taxes on Respondent's returns. The AHC stated that to find otherwise would exalt form over substance. We disagree.

"As a general rule the sovereign need not refund taxes voluntarily paid even if illegally collected." *Sprint Communications Co.,* 64 S.W.3d at 834. " 'Section 144.190, however, provides a limited waiver of sovereign immunity to allow the recovery of taxes, penalties, or interest paid that have been illegally or erroneously computed or collected.'" *Ford Motor Co.,* 97 S.W.3d at 461 (quoting *Sprint Communications Co.,* 64 S.W.3d at 834). Such "[s]tatutory provisions waiving sover-

---

4. Section 144.190.2 provides:

If any tax, penalty or interest has been paid more then once, or has been erroneously or illegally collected, or has been erroneously or illegally computed, such sum shall be credited on any taxes then due from the person legally obligated to remit the tax pursuant to sections 144.010 and 144.510, and the balance, with interest as determined by section 32.065, RSMo, shall be refunded to the person legally obligated to remit the tax, but no such credit or refund shall be allowed unless duplicate copies of a claim for refund are filed within three years from the date of overpayment.

*Ford Motor Co.,* 97 S.W.3d at 460–61.

eign immunity are strictly construed, and when the state consents to be sued, it may prescribe the manner, extent, procedure to be followed, and any other 'terms and conditions as it sees fit.'" *Sprint Communications Co.*, 64 S.W.3d at 834 (quoting *Richardson v. State Highway & Transp. Comm'n*, 863 S.W.2d 876, 879–80 (Mo. banc 1993)).

 In that vein, the legislature provided in § 144.190.3 "that '[e]very claim for refund must ... state the specific grounds upon which the claim is founded.'" *Kansas City Royals Baseball Corp. v. Director of Revenue*, 32 S.W.3d 560, 563 (Mo. banc 2000). "This procedure was designed so that the Director would be apprised of the grounds of the refund claim so that a meaningful determination of the issues presented by the taxpayer could be made." *Dyno Nobel Inc.*, 75 S.W.3d at 242. Thus, "[t]his requirement, because it is a narrow waiver of the state's sovereign immunity, has been read to require that 'the Director of Revenue be apprised of the grounds for the taxpayer's claimed refund in a manner which allows him [or her] to make a meaningful determination of the issues presented by the taxpayers.'" *Kansas City Royals Baseball Corp.*, 32 S.W.3d at 562 (quoting *Matteson v. Director of Revenue*, 909 S.W.2d 356, 360 (Mo. banc 1995)). Furthermore, "'[a]ll grounds for refund, as well as all claims for refund, must be raised first with the Director of Revenue.'" *Matteson*, 909 S.W.2d at 360 (quoting *International Bus. Machs. Corp. v. Director of Revenue*, 765 S.W.2d 611, 612–13 n. 5 (Mo. banc 1989)). " 'The Commission may not decide claims filed for the first time before [it], nor may the Commission rule on grounds not presented to the Director of Revenue.'"[5] *Id.* (quoting *International Bus. Machs. Corp.*, 765 S.W.2d at 612–13 n. 5). "Any issue not presented to the Director in the claim for refund may not be presented to the Commission." *Dyno Nobel Inc.*, 75 S.W.3d at 242.[6]

Respondent attempts to liken this case to the facts presented in *Dyno Nobel Inc. v. Director of Revenue*, 75 S.W.3d 240, 242 (Mo. banc 2002), wherein the Missouri Supreme Court held that Dyno Nobel's refund request provided adequate notice to the Director. Respondent notes that the grounds stated in the claim for refund simply stated: "Taxes were incorrectly accrued on purchases that were not taxable

---

5. The pleading requirements and the Commission's role differ in deficiency proceedings under § 143.611 because that statute merely requires the director of revenue to "notify the taxpayer of the amount of deficiency *proposed* to be assessed." *Matteson v. Director of Revenue*, 909 S.W.2d 356, 360 (Mo. banc 1995). " 'The very use of [the word "proposed"] indicates that the amount set out is fluid, subject to adjustment upon the determination of additional facts.'" *Id.* (quoting *J.C. Nichols Co. v. Director of Revenue*, 796 S.W.2d 16, 21 (Mo. banc 1990)). Accordingly, "[i]n deficiency proceedings, ... the [Commission]'s jurisdiction is de novo, even to the extent that the [Commission] may increase the director's assessment in a given case on grounds not previously raised either by the taxpayer in a protest or by the director in a deficiency notice." *Id.*

6. *See Kansas City Royals Baseball Corp.*, 32 S.W.3d at 563 (holding that the Royals were not entitled to have the Commission determine whether use tax paid on yearbooks sold at the stadium should have been refunded because that issue was not raised in the claim filed with the Director, which simply requested a refund for incentive items given away to attendees of baseball games); *Matteson*, 909 S.W.2d at 360 (holding that taxpayer's broad claim to the Director that non-Missouri source income should not have been included to calculate the rate of tax on timber profits did not include a claim that military pension received by the taxpayer should not be taxed and claim could not be properly entertained by the Commission).

to Dyno Nobel, Inc." *Id.* at 241. Respondent further points out that the Court in *Dyno Nobel* observed that information before the Director and information acquired by an auditor for the Director, who was not involved with the refund request,[7] obviously demonstrated that the transactions involving the taxes challenged by Dyno Nobel should not have been subject to the use tax. *Id.* at 242.

Respondents have failed to note, however, that Dyno Nobel attached invoices to its refund application showing payment for electricity to Hercules, Inc., thereby indicating what transactions it believed should not have been taxed. *Id.* at 241. More importantly, Dyno Nobel also supplemented its refund request with a letter sent to the Director approximately two months after the filing of the request and prior to the Director's decision. *Id.* That letter provided the Director with a more detailed explanation of the claim being made by the taxpayer, stating:

> Dyno Nobel, Inc. is requesting a refund for use taxes that were incorrectly accrued on purchases that were not taxable. Dyno Nobel entered into a cost sharing agreement with Hercules, Inc. over the electricity generated at the Hercules plant. The agreed-upon percentage set forth in the cost sharing agreement is 45% of fixed costs and a percentage of variable costs based on usage; therefore, Dyno Nobel pays Hercules 45% of the cost to generate electricity at the Hercules plant. The costs include all inputs such as labor, overhead, and coal. Hercules pays the full amount of use tax on taxable inputs such as coal and includes those taxes as part of its cost basis. However, for the peri-

od October 1994 through September 1997, Dyno Nobel accrued the use tax as well on the full amount of the electricity it used. As a result, tax has been paid on the same item twice. Dyno Nobel is simply requesting a refund on taxes that should never have been paid.

*Id.* at 241–42. In rendering its decision, the Missouri Supreme Court found that "[w]hile it is true that the refund request and subsequent clarification submitted by Dyno were not artfully drafted, they were sufficient to apprise the Director of the grounds presented for the refund, and allowed for a meaningful determination of those issues." *Id.* at 242.

Unlike Dyno Nobel, Respondent did not attach any documentation to its refund claim indicating to the Director which transactions it claimed were improperly taxed. Furthermore, Respondent did not provide the Director with any supplemental explanation of what its claims entailed. Respondent simply did not provide the Director with sufficient information about its claim to apprise the Director of its contention that use tax payments had been incorrectly classified on its returns as sales tax.

The Director reviewed the only grounds for refund presented to it in Respondent's application and granted Respondent a refund of local use tax paid by AT & T based upon the amount of use tax reflected in AT & T's tax returns. Respondent's applications failed to provide the Director with any indication that Respondent also wanted the Director to consider whether some of the taxes that had been remitted by AT & T as sales tax should have been categorized as use tax. Respondent did not provide the Director with any further explana-

---

7. "An auditor from the Department of Revenue visited Dyno's facility in November 1998. While the auditor did not review Dyno's refund claim, the auditor spent several days at the facility and was aware of its setup and location." *Dyno Nobel Inc.,* 75 S.W.3d at 241 n. 1.

tion of Respondents claims prior to the filing of the Director's final decision. Thus, by failing to inform the Director that it felt that some of its previously reported sales tax should have been categorized as use tax, Respondent failed to provide the Director with any meaningful opportunity to examine and determine that issue.

Since the issue of whether use taxes had been improperly reported and remitted as sales tax was not raised with the Director, the Commission could not properly consider that claim. *Matteson,* 909 S.W.2d at 360. The Commission erred in determining otherwise.

The decision of the Commission is reversed.

All concur.