Bryant E. STIGGER, Sr., Respondent,

v.

Emily J. MANN, Individually and as next friend of Bryant E. Stigger, Jr., Defendant;

State of Missouri, ex rel. Family Support Division, Appellant.

No. WD 68099.

Missouri Court of Appeals, Western District.

Aug. 26, 2008.

Application for Transfer to Supreme Court Denied Sept. 30, 2008.

Jeremiah W. (Jay) Nixon, Atty. Gen., Linda Manlove–Braxton, Asst. Atty. Gen., Jefferson City, MO, for appellant.

Elizabeth Hill, Overland Park, KS, for respondent.

Before JAMES M. SMART, JR., P.J., THOMAS H. NEWTON, and RONALD R. HOLLIGER, JJ.

JAMES M. SMART, JR., Judge.

This case involves an award of attorneys' fees under section 536.087 RSMo 2000. That section, enacted as part of our Administrative Procedure Act (Chapter 536), authorizes a court or administrative body to award attorneys' fees against the state to a party who prevails in an "agency proceeding" or "civil action arising therefrom." Because we determine that the independent action in equity filed by the Respondent Bryant Stigger was not an "agency proceeding" and did not arise "therefrom" within the meaning of section 536.087, the judgment for attorneys' fees is reversed.

## Background

On June 22, 1997, Emily Mann gave birth to a child she named Bryant E. Stigger, Jr. Based upon assurances made by Emily Mann to Bryant E. Stigger that he was the father of the child, Mr. Stigger signed an acknowledgement of paternity while the child was still in the hospital. The birth certificate named Stigger as the father.

One month later, when Ms. Mann completed a form for the Division of Child Support Enforcement, she stated that Stigger was the father of the child and that it was not possible for another man to be the father. In accordance with this information, an action to establish paternity and set child support was commenced by the Division. Stigger was served with notice of the proceedings. The notice advised Stigger of the preliminary finding of paternity and proposed to set child support in the amount of $174.00 per month. The notice advised Stigger of his right to an administrative hearing to challenge the findings. Stigger requested an administrative hearing, but then failed to appear at the time of the hearing. The Division confirmed the finding of paternity by default. The administrative order was filed with the Circuit Court of Buchanan County.

The State filed a criminal non-support case against Stigger in Buchanan County in 1998. Stigger stated at that time that he had developed questions about his paternity of the child. Stigger's request for a blood test was denied.

In a subsequent criminal non-support case filed five years later in Jackson County, Stigger obtained an order for a paternity test. The test indicated that Stigger was not the father. Subsequently, the State dismissed the criminal non-support case.

Stigger thereafter filed a motion in Buchanan County, without expressly invoking a particular court rule (but employing language from Rules 74.05 and 74.06), to set aside the judgment of paternity and child support that was based on the administrative determination. He contended that the judgment must be set aside because Emily Mann had misled him into defaulting and because the blood test showed non-paternity. He mentioned the fear of suffering a suspension of his driver's license for failing to pay child support. The circuit court dismissed Stigger's motion without preju-

dice on the ground that it failed to state a claim upon which relief could be granted.

Stigger thereafter obtained his present attorney and filed an action in equity in Jackson County seeking a declaration of non-paternity. He joined as defendants both Emily Mann and the State of Missouri (through the Division of Child Support). He also sought recovery from Emily Mann of all child support amounts paid her pursuant to the support order. The action, alleging that extrinsic fraud exercised by Emily Mann caused Stigger to default on the issue of paternity, was brought eight years after the original judgment of paternity. The court, determining that there was extrinsic fraud, set aside the judgment of paternity. The court decreed that the judgment of paternity was set aside. The court also ruled that Stigger's child support obligation was terminated and that all arrearage was deemed satisfied. The court, on grounds related to the welfare of the child, denied recovery against Emily Mann for the amounts previously paid her for child support.

After denying the State's motion for rehearing, the court granted a motion filed by Stigger for attorneys' fees pursuant to section 536.087 RSMo 2000. The court awarded Stigger attorneys' fees in the amount of $12,624.00. The State appeals only the judgment awarding attorneys' fees.

## Standard of Review

■ Appellate review of a trial court decision "will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). In interpreting the statutes of Missouri, we seek to "ascertain the intent of the legislature from the language used, to give effect to the intent if possible, and to consider the words in their plain and ordinary meaning." *Edwards v. Gerstein,* 237 S.W.3d 580, 581 (Mo. banc 2007).

Because there is no dispute as to the essential facts of this case, and because the case involves an issue of statutory interpretation, we review the judgment of the trial court to see whether it erroneously declares the law or erroneously applies the law.

## Analysis

Section 536.087 provides in subsection 1:

A party who prevails in an agency proceeding or civil action arising therefrom, brought by or against the state, shall be awarded those reasonable fees and expenses incurred by that party in the civil action or agency proceeding, unless the court or agency finds that the position of the state was substantially justified or that special circumstances make an award unjust.

Subsection 2 of 536.087 states as follows:

In awarding reasonable fees and expenses under this section to a party who prevails in any action for judicial review of an agency proceeding, the court shall include in that award reasonable fees and expenses incurred during such agency proceeding unless the court finds that during such agency proceeding the position of the state was substantially justified, or that special circumstances make an award unjust.

Subsection 4 states, in part, as follows:

A prevailing party in an agency proceeding shall submit an application for fees and expenses to the administrative body before which the party prevailed. A prevailing party in a civil action on appeal from an agency proceeding shall

submit an application for fees and expenses to the court.

■ Section 536.087, adopted in 1989, allows attorneys' fees to be awarded against the state to a party who prevails in an "agency proceeding" or a "civil action arising therefrom" unless the court finds that the position of the state was substantially justified or that special circumstances would make an award unjust. The statute is a waiver of sovereign immunity to the extent of the terms set out therein. *State Bd. of Regis. for Healing Arts v. Warren*, 820 S.W.2d 564, 565 (Mo.App. 1991). Before the enactment of section 536.087 in 1989, there were no statutory provisions allowing a private party to recover attorneys' fees or other expenses. *Id.* at 566.

The statute applies only to an "agency proceeding or civil action arising therefrom." Section 536.085(1) defines an agency proceeding as "an adversary proceeding in a contested case pursuant to this chapter." A "contested case" in turn is a "proceeding before an agency in which legal rights, duties, or privileges of specific parties are required by law to be determined after hearing." Section 536.010(4). Section 536.063 provides that a contested case is commenced by "the filing of a writing by which the agency seeks such action as by law can be taken only after an opportunity for hearing."

The agency was not permitted to set a support amount after a determination of paternity without an opportunity for hearing. *See* section 454.475. The State implies, but does not develop an argument, that the agency action in this case was not a "contested case." If the proceeding did involve a "contested case," presumably it would also be an "agency proceeding." *Cf. Lipic v. State*, 93 S.W.3d 839, 841–43 (Mo. App.2002); *see also BBCB, LLC v. City of Independence*, 201 S.W.3d 520, 527–28 (Mo.App.2006). Because the State does not show that the proceeding in question was not an "agency proceeding," we will assume for purposes of our analysis, without deciding, that the agency determination was an "agency proceeding." [1]

■ Before Stigger could be entitled to fees and expenses under 536.087, the subsequent action in equity would have to be shown to be a civil action that arose "therefrom," that is, from the "agency proceeding." The equity action which Stigger filed to challenge and reverse the finding of paternity was not an action filed under Chapter 536 and was not an appeal of an "agency proceeding." Stigger asks us, in effect, to construe the "arising therefrom" language of section 536.087 broadly enough that it could be said that the independent action in equity arose "therefrom," that is, from the "agency proceeding." We agree that the phrase "arising therefrom," when section 536.087.1 is considered by itself, could seem broad. But we also recognize that we cannot consider subsection 1 entirely in isolation. The various provisions of a statute must be interpreted in light of the language of the entire statute. *See Gott v. Dir. of Revenue*, 5 S.W.3d 155, 159–60 (Mo. banc 1999).

Section 536.087.2, recited above, refers to an award of fees and expenses to a party "who prevails in an action for *judicial review of an agency proceeding*." (Emphasis added.) Thus, the only judicial proceeding expressly contemplated by section 536.087.2 is an action involving "judi-

---

1. Review of section 454.475 RSMo leaves us somewhat cautious about asserting that the original proceeding here was technically a "contested case," but we need not delve into all the contours of that question in view of the disposition of this case based on the interpretation of "arising therefrom" in 536.087.

cial review" of an agency determination. The ordinary sense of that language would seem to refer to an *appeal* of an agency determination to a court.

Also, we note that section 536.087.4, after addressing the filing of an application for fees and expenses with the administrative body (as to the agency proceeding), then addresses an application for fees "in a civil action *on appeal* from an agency proceeding." (Emphasis added.) Thus, subsection 4, like subsection 2, tends to indicate that the legislature, in using the language "civil action arising therefrom," referring specifically of judicial review conducted on *appeals* from agency proceedings. An action in equity to obtain relief from a judgment on grounds of extrinsic fraud does not involve "judicial review" of the agency proceeding in the normal sense. Such an action is obviously a special proceeding to avoid the effect of the judgment on other grounds.

Although the foregoing contextual considerations are persuasive, we do not rest our analysis there because it is not clear that these considerations are conclusive, taken by themselves. Because a legislative body might anticipate that appeals of agency proceedings would be the *normal* way that a court would be addressing the substance of an agency determination, it is possible that the legislature might have specifically thought of *appeals* of administrative rulings in subsections 2 and 4 without intending to strictly limit fee recover-

ies for court proceedings to appeals of administrative proceedings.

The question is whether it was *purposeful* that the drafters did not use broader language in subsections 2 and 4. In other words, was it purposeful that the drafters did not use language that would obviously have involved (or at least recognized the possibility of) *other ways* of securing a court ruling reversing *the effect* of an administrative determination? Should we regard the foregoing language as to "judicial review" of agency proceedings and "appeals" therefrom as reflecting a specific *intention* to limit recovery of attorneys' fees to the procedure of such direct appeal cases?

We do not find a wealth of materials and resources to help in our pursuit of the answer to this question. The parties seem to be unable to find and submit significant pertinent authorities. Missouri courts have not specifically addressed this issue before, and this language (in 536.087) from our Missouri Administrative Procedure Act is not common in state administrative procedure acts.

A Missouri case cited and discussed by the State is *State ex rel. Division of Transportation v. Sure–Way Transp., Inc.,* 948 S.W.2d 651 (Mo.App.1997) (referred to as *Sure–Way III* ). *Sure–Way III* does not, in our view, clearly light the way for us, because the procedural steps there were unique and therefore not comparable to the scenario we have before us.[2]

---

**2.** In *Sure–Way*, there was a unique procedure as to a civil action for penalties against trucking companies pursuant to section 390.156. *Sure–Way II,* 884 S.W.2d at 353 n. 5. The procedure allowed the Division of Transportation to bring an action in court to impose penalties for tariff violations, but only after there had first been an administrative determination that the trucking company was in violation. *Id.* n. 5. In *Sure–Way*, the agency had found tariff violations after a hearing.

See *Sure–Way III,* 948 S.W.2d at 654. The Division then proceeded in court against the company under section 390.156. *Id.* The circuit court ruled in favor of the trucking company. *Id.* The Division appealed the judgment, contending that the circuit court, in determining the penalty issue, was bound by the administrative adjudication and the trucking company was collaterally estopped from relitigating the issue in the court case. *Sure–Way II,* 884 S.W.2d at 352–53. This court

The court proceeding in *Sure–Way* was clearly dependent on the administrative hearing, and the imposition of penalties resulting from the administrative determination could not be accomplished without the court proceeding. *See State ex rel. Mo. Div. of Transp. v. Sure–Way Transp., Inc.*, 884 S.W.2d 349, 353 n. 5 (Mo.App. 1994) (*Sure–Way II* ). In that sense, the court proceeding clearly arose "from" the administrative hearing. But this case has an entirely different procedural background. We cannot find *Sure–Way* to be a very helpful authority in this case.

As for the general philosophy behind section 536.087, there is again little that is helpful. We do not find the phrase, "agency proceeding or civil action arising therefrom," in any other state's administrative procedure act. We do observe that four states use very similar language in their fair housing statutes ("in any administrative proceeding ... or any court proceeding arising therefrom").[3] The language of those statutes was apparently drawn from a provision of the federal Fair Housing Act, 42 U.S.C. section 3612(p), adopted in 1968, which provides in pertinent part:

> In any administrative proceeding ... or any court proceeding arising therefrom, or any civil action under this section, the administrative law judge or the court, as the case may be, in its discretion, may allow the prevailing party, other than

the United States, a reasonable attorney's fee and costs....

Three of those state statutes also contain similar "or any civil action under this section" language, which is in addition to the phrase "or any court proceeding arising therefrom." Because we presume that there is no intent to be redundant in the expression of these two phrases, we conclude that the phrase "or any civil action under this section" in those state statutes would include proceedings that are excluded under the phrase that precedes it. This would indicate that the *latter* language *would* include a separate civil action against the United States (that is *not* an appeal of an administrative proceeding), and that the former language would *not* include a separate action in equity but would be limited to judicial review of administrative proceedings. Thus, we assume that the phrase, "or civil action arising therefrom," in 536.087 was intended to refer only to judicial review of administrative proceedings.

A case that offers some insight into 536.087 is *Greenbriar Hills Country Club v. Director of Revenue*, 47 S.W.3d 346 (Mo. banc 2001) (sometimes called *"Greenbriar III "*). In that case, the Director of Revenue had sought to close what the Director viewed as a tax loophole by imposing a sales tax liability on a country club even though the country club had complied with the Department of Revenue's own applica-

---

rejected that argument, holding that the civil penalty lawsuit was "not collateral" but "was an extension and second step to that proceeding." *Id.* at 353. Thus, this court affirmed the trial court ruling in favor of the trucking company. *Id.*

The trucking company then obtained an award of attorneys' fees and expenses under 536.087 in the trial court. *Sure–Way III*, 948 S.W.2d at 653–54. On appeal from that ruling, the Division argued, *inter alia*, that the civil penalty action in circuit court did not "arise from" the administrative determination but was an "entirely distinct action collateral

to the ALJ hearing." *Id.* at 657. This court, in rejecting the argument, quoted its opinion in *Sure–Way II* to the effect that the court proceeding was not collateral but was "an extension and second step to that proceeding." *Id.*

**3.** Those states are: Delaware (DEL.CODE ANN. tit. 6, sec. 4612(*o*)); Kentucky (KY.REV.STAT.ANN. sec.344.675(1)); Washington (WASH. REV.CODE ANN. sec. 49.60.340(6)); and West Virginia (W. VA.CODE ANN. sec 5–11Q–13(p)).

ble long-standing regulations. *Id.* at 349. The country club filed a protest on the basis that it had relied upon those regulations in paying its sales taxes. *Id.* The country club did not prevail before the Administrative Hearing Commission (AHC), but eventually prevailed before the Missouri Supreme Court. *Id.*

The country club then filed a petition under section 536.087 to recover its attorneys' fees and expenses in the case. *Id.* at 349–50. The country club contended that if the Director had wanted to change the rules, the Director should have proceeded in accordance with the rulemaking statutes, sections 536.010 to 536.050, rather than forcing the country club to litigate the issue. *Id.* at 356–57. The Court observed that the Director's actions in departing from the regulations and, in effect, repudiating them, amounted to improper rulemaking by adjudication. *Id.* at 357. The Court held that the Director was not "substantially justified" in its position because the Director should not have made the country club bear the cost of its new rulemaking through unnecessary litigation. *Id.* at 358. The Court noted that a purpose of 536.087 is to "require agencies to carefully scrutinize agency and court proceedings and to increase accountability of the administrative agencies." *Id.* at 358.[4]

We note that the Court in *Greenbriar,* without citation to authority, stated that section 536.087 was "modeled after" the federal Equal Access to Justice Act, 28 U.S.C. section 2412. *Id.* The provisions of the federal Equal Access to Justice Act (EAJA) are codified in two statutes: 5 U.S.C. section 504 and 28 U.S.C. section 2412. *See Spencer v. NLRB,* 712 F.2d 539,

544 n. 17 (D.C.Cir.1983). The first provision, 5 U.S.C. section 504, which is part of the federal Administrative Procedures Act, offers attorneys' fee awards only as to administrative proceedings, while 28 U.S.C. section 2412, on the other hand, gives a broad opportunity for recovery of attorneys' fees in *any* civil action other than a tort action (including a court review of an administrative determination) where the plaintiff is challenging unwarranted government action. *See* 28 U.S.C. section 2412(d)(1)(A), which states:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of the action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

While we recognize that the spirit of the EAJA and the concept of "leveling the playing field" as to resources for litigation against government overreaching (a clear purpose of the EAJA) certainly made an award under 536.087 appropriate in *Greenbriar,* we note the obvious fact that the language of 536.087 is not particularly in line with that of the EAJA. It is more in line with the language of the federal Fair Housing Act of 1968, though it is more limited in scope. Indeed, the EAJA's

---

4. The Court considered the relationship of section 136.315 (fee recovery for prevailing parties in certain tax cases) with section 536.087, concluding that these are two remedies for fee recoveries, one geared to a narrow class of claimants (tax issue claimants) and one available to a broader class of claimants (parties to administrative actions). *Greenbriar III,* 47 S.W.3d at 352. The country club in *Greenbriar III* was found eligible to invoke 536.087. *Id.* at 358.

broad waiver of sovereign immunity clearly goes way beyond anything contemplated in 536.087. The EAJA applies essentially to *all civil actions* (except for tort claims) brought by or against the United States. It allows private prevailing parties to recover attorneys' fees in a "wide variety of circumstances." *See Spencer,* 712 F.2d 539 at 544–45, n. 15. The EAJA was passed in response to a congressional finding that certain parties, particularly small businesses and proprietorships, were hindered in pursuing their rights against "unreasonable government action because of the expense involved" in litigating against the government. Note, *The Award of Attorneys' Fees Under the Equal Access to Justice Act,* 11 HOFSTRA L.REV. 307 (1982).

Thus, while we recognize that 536.087 was "modeled after" the EAJA in its philosophical direction, we cannot say that the scope of 536.087 lines up with that of the EAJA. In fact, the *Greenbriar* Court, provided some insight into the bounds of its "modeled after" comment by noting that allowing an award of attorneys' fees to private parties who successfully "challenge governmental departures from established policy" would foster the "refinement of the administration of the law" and provide a "valuable deterrent to officials contemplating making gratuitous exceptions to general rules." [5] *Greenbriar,* 47 S.W.3d at 358. Also we note that in the seminal reported case on 536.087, *Warren,* this court earlier had expressed the thought that, in 536.087, the legislature would have thought it "reasonable to ask the state through its tax dollar to finance those contests in which public policy is formulated." 820 S.W.2d at 565

As far as the language of 536.087, we cannot help but notice the fact that Missouri, in adopting that section, did not copy the scope of the attorneys' fee language in the EAJA or even that of the Fair Housing Act. The stark contrast in scope between the federal provisions and 536.087, which must be considered deliberate, leaves us without a strong argument or authority by which to uphold the trial court's award of attorneys' fees in this case. In determining whether it is likely that the General Assembly was purposeful in speaking only of "appeals" and of "judicial review" of agency proceedings, we believe we must conclude that the use of that much narrower language (and the avoidance of broader language) *was* purposeful in reflecting the legislature's intended scope of 536.087.

▮ Our attempt to confirm the propriety of the award is also undermined by the fact that section 536.087 is a waiver of sovereign immunity, *Warren,* 820 S.W.2d at 565, and therefore must be "strictly construed." *Sprint Commc'ns Co., L.P. v. Dir. of Rev.,* 64 S.W.3d 832, 834 (Mo. banc 2002); *Wellner v. Dir. of Revenue,* 16 S.W.3d 352, 354–55 (Mo.App.2000) (*discussing Warren,* 820 S.W.2d at 565, and its analysis of section 536.087). In construing a statutory waiver, we are not to construe

---

5. The trial court, while not quarreling with the reasonableness of the State's *original* agency determination, believed the State was quite unreasonable in vigorously opposing Stigger's later action in equity. There is no contention here that the State was attempting to use this case, at Stigger's expense, to establish a new rule. Stigger's argument instead is based on the basic proposition that the State should not seek to force a person to support a child that the State knows is not his child. The State does not contradict that proposition. The State also does not argue that it is only the original agency determination, and not its position in any later proceedings, that must be "substantially justified." In view of the scope of the State's arguments, and in view of the disposition we reach as a matter of statutory interpretation, we need not concern ourselves with the issue of "substantial justification."

it beyond the meaning of the words expressed but are, rather, to construe it narrowly. *See, e.g., Ford Motor Co. v. Dir. of Revenue,* 97 S.W.3d 458, 461 (Mo. banc 2003), *and Sprint Commc'ns,* 64 S.W.3d at 834 (both stating that statutory waivers of sovereign immunity are to be strictly construed in the context of a statute that provides a limited waiver of sovereign immunity to allow the recovery of sales taxes, penalties, or interest that have been "illegally or erroneously computed or collected"); *Richardson v. State Highway & Transp. Comm'n,* 863 S.W.2d 876, 882 (Mo. banc 1993) (citing section 536.087 as an example of a statutory waiver of sovereign immunity that is strictly construed). *See also Bachtel v. Miller County Nursing Home Dist.,* 110 S.W.3d 799, 803–04 (Mo. banc 2003) (intent to waive sovereign immunity must be express rather than implied).

We cannot confirm that the legislative intent behind 536.087 would have encompassed an award of attorneys' fees to a party who, as a result of a later blood test, brings a successful action in equity to avoid an earlier-entered child support adjudication. If equity and public policy require that attorneys' fees be allowed in a case such as this, as the trial court believed, we believe it will be necessary for the General Assembly to clarify by an amendment that 536.087 is intended to authorize such an allowance. Our reading of 536.087 fails to show that the General Assembly would have intended that the prevailing party in an action in equity to vacate an earlier judgment on grounds of extrinsic fraud would be eligible under 536.087 for an award of attorneys' fees.

## Conclusion

We conclude that the trial court, while appropriately impressed with the work of Stigger's counsel in obtaining relief from the earlier judgment against the Sate's opposition, erred in its interpretation of the applicability of section 536.087 to this action. Therefore, we must vacate the judgment of the trial court awarding attorneys' fees to Mr. Stigger under section 536.087. The judgment is reversed.

All concur.