II. STANDARD OF REVIEW
This Court reviews the AHC's interpretation of revenue statutes de novo. Union Elec. Co. v. Dir. of Revenue, 425 S.W.3d 118, 121 (Mo. banc 2014); Circuit City, 438 S.W.3d at 399.
A decision of the AHC will be affirmed if: (1) it is authorized by law; (2) it is supported by competent and substantial evidence based on the whole record; (3) mandatory procedural safeguards are not violated; and (4) it is not clearly contrary to the reasonable expectations of the legislature.
Union Elec., 425 S.W.3d at 121; Mo. Const. art. V, § 18.
III. CRESCENT'S REFUND REQUEST WAS UNTIMELY
Section 144.020.1(1) levies a tax upon "every retail sale in this state of tangible personal property." The term "sale at retail" is defined as:
any transfer made by any person engaged in business as defined herein of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration.
§ 144.010.1(11). Under this statutory definition, a sale at retail occurred each time Crescent transferred tangible personal property not for resale for a valuable consideration.
*668 The record shows three distinct instances in which Crescent transferred tangible personal property: December 27, 2012; February 4, 2013; and June 2013. On the first occasion, Crescent shipped two water heating systems to Murphy's customer in Florida, and on the second and third occasions it shipped the customer components for those heaters. Crescent sent its invoice after each sale for the amount due for that particular sale, including for Missouri sales tax, and was paid the invoiced Missouri sales tax along with its other charges.
Crescent remitted the sales tax it had collected for the first two sales on April 26, 2013, pursuant to section 144.080.1.[3] April 26, 2013, therefore, is the date Crescent paid the sales tax for these sales which it and the director now agree should not have been paid. Section 144.190.2 provides:
If any tax, penalty or interest has been paid more than once, or has been erroneously or illegally collected ... the balance, ... shall be refunded to the person legally obligated to remit the tax, but no such credit or refund shall be allowed unless duplicate copies of a claim for refund are filed within three years from date of overpayment.
(Emphasis added).
The determinative issue is the meaning of "date of overpayment" as used in section 144.190.2. The director contends the plain meaning of "date of overpayment" is the date Crescent remitted the Missouri sales tax it now says it should not have paid. In support, the director cites Ford Motor Co. v. Dir. of Revenue, 97 S.W.3d 458, 462 (Mo. banc 2003), which holds "date of overpayment" means "when the taxpayer remits payment of tax on the transactions that generate the issue of overpayment."
Crescent's contrary argument is more complex. It concedes the refund claim came more than three years after April 26, 2013, the date on which it actually overpaid the sales tax it now says it should not have had to pay. But Crescent argues it need not have filed its return for the first two transactions on April 26, 2013. Rather, it contends, it could have waited to file its return and remit all the sales tax on December 20, 2013, the date on which it filed its return and paid the sales tax for the June 2013 sale. Crescent argues the director should treat all three transactions as portions of a single sale rather than as three separate sales as the sales were all made pursuant to a single contract between Murphy and Crescent for two water heating systems. Only when the final component was sent should that sale be considered complete, Crescent argues.
It is significant whether the sales are treated as a single sale only because 12 C.S.R. 10-102.016(2)(A) provides the "date of the overpayment is the due date of the original return or the date paid whichever is later " (emphasis added). According to Crescent, therefore, under the regulation, if all three sales are treated as a single sale for which the due date was December 2013, then the sales tax refund claim would be timely for all the sales tax. This is so, it claims, even though the actual date of payment, April 26, 2013, was more than three years prior to the filing of the refund request, because the due date would be later than the date the sales tax actually was remitted. Crescent distinguishes Ford Motor on the basis it did not address the *669 then recently promulgated regulation, 12 C.S.R. 10-102.016(2)(A).
The normal meaning of "overpayment" is "payment in excess of what is due: the amount of such excess." Webster's 3rd New International Dictionary 1609 (2002). The plain meaning of "date of overpayment" then, would be the date on which the taxpayer made a payment in excess of what is due. Section 144.190.2 refers only to "date of overpayment," not the date the return might have been due, and nothing in the statute provides the term "overpayment" is used in any way other than its usual sense. It is well-settled "regulations may be promulgated only to the extent of and within the delegated authority of the statute involved." Hearst Corp. v. Dir. of Revenue, 779 S.W.2d 557, 558-59 (Mo. banc 1989). "If a regulation is inconsistent with the statute, it is the statute, not the regulation, that this Court will apply." Union Elec., 425 S.W.3d at 125. Even if valid, however, the regulation is applicable only if Crescent is correct that its three transactions constitute a single retail sale for sales tax purposes. And, in fact, they do not.
In support of its position that the three sales should be treated as a single sale, Crescent relies on the definition of "sale" under the Missouri Uniform Commercial Code ("UCC"), which provides in section 400.2-106, RSMo 2000: "A 'sale' consists in the passing of title from the seller to the buyer for a price." Crescent says title did not pass until the Florida customer had the last piece necessary for the water heating systems to work, which it says was in June 2013. Crescent also relies on UCC section 400.1-103(a)(2), RSMo 2000, which provides: "This chapter shall be liberally construed and applied to promote its underlying purposes, which are ... to permit the continued expansion of commercial practices through custom, usage, and agreement of the parties." Crescent says its custom, usage, and agreement in its dealing with Murphy all show these three transactions were part of the single contract for sale of two water heating systems.
The issue here, however, is not the UCC's definition of "sale" or whether the parties entered into a single contract for the purchase of two water heating systems. "The legislature's own construction of its language by means of definition of the terms employed should be followed in the interpretation of the statute to which it relates and is intended to apply and supersedes the commonly accepted dictionary or judicial definition and is binding on the courts." State v. Hermanns, 641 S.W.2d 768, 769 (Mo. banc 1982). In other words, the definition of "sale at retail" in Missouri's tax code is what governs here. Under section 144.010.1(11), a sale occurred each of the three times Crescent transferred tangible personal property for a valuable consideration.
Because three separate sales at retail occurred as defined under Missouri sales tax law, Crescent was required to file its return and remit the sales tax it had collected on the first two sales with its March 2013 return, which was due by April 30, 2013. It filed that return on April 26, 2013, and remitted the sales tax on those two sales with that return. As this was more than three years prior to the filing of Crescent's May 11, 2016, claim for refund, the claim for refund was untimely for those remittances.
IV. CONCLUSION
For the reasons stated above, the decision of the AHC is affirmed.
All concur.

Section 144.080.1 provides:
Every person receiving any payment or consideration upon the sale of property ... shall, on or before the last day of the month following each calendar quarterly period of three months, file a return with the director of revenue showing the person's gross receipts and the amount of tax levied in section 144.020 for the preceding quarter, and shall remit to the director of revenue, with the return, the taxes levied in section 144.020....